UNITED STATES of America,
Plaintiff–Appellee

v.

Melinda OLDHAM and Tony
G. Oldham, Defendants–
Appellants

No. 99–5964, 99–5988.

United States Court of Appeals,
Sixth Circuit.

April 2, 2001.

Before JONES, BATCHELDER, and CLAY, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

On February 2, 1999, Defendants–Appellants Tony Oldham and Melinda Oldham pleaded guilty to one count of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846 and one count of aiding and abetting an attempt to manufacture methamphetamine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. On June 14, 1999, Tony and Melinda Oldham were sentenced. The Oldhams now appeal their sentences to this Court. For the reasons stated below, we AFFIRM the Oldhams' sentences.

## I. Facts

In winter of 1998, Randy Shelton showed Tony Oldham how to make methamphetamine. Having learned the process, Tony Oldham and his wife Melinda Oldham set out to make methamphetamine on their own. Since Melinda did not want to make the methamphetamine in their new apartment, the Oldhams decided to ask Michael and Jennifer Daniel if they could use their trailer. On February 24, 1998, the Oldhams approached Jennifer Daniel. She told them that they could use the trailer if her husband consented. Later that day, Michael Daniel called the Oldhams and agreed to let them use the trailer in exchange for some of the methamphetamine that they produced.

Earlier that day, Melinda Oldham had purchased several items needed to manufacture methamphetamine and placed them in a green tupperware container. After receiving Michael Daniel's call, the Oldhams brought these materials along with some others to the Daniels' trailer. The Oldhams entered the trailer and proceeded to arrange the components. Tony Oldham placed a gallon jar with a mixture of ingredients on top of a kerosene heater in the bathroom of the trailer.

At this point, Melinda Oldham and Jennifer Daniel left the Daniels' trailer to pick up some methamphetamine at Randy Shelton's trailer. Shortly thereafter, Tony Oldham and Michael Daniel also left to steal some anhydrous ammonia so that they would have all of the chemicals necessary to produce methamphetamine. While the Oldhams and the Daniels were gone, the mixture that Tony Oldham had left on top of the kerosene heater exploded causing serious damage to the Daniels' trailer.

A local police officer responded to the explosion and saw the evidence of drug manufacturing. He called a narcotics detective who later called the Drug Enforcement Administration ("DEA"). After obtaining consent to search the trailer, a DEA agent found the components that had not been destroyed by the explosion. Scrapings taken from a wall and a door contained ephedrine, the principal ingredient in methamphetamine according to the process that Tony planned to use. Several

days later, the police searched the Oldhams' apartment. They found a shopping list and a Wal–Mart receipt for some of the lab components that Melinda Oldham had bought.

The Oldhams eventually pled guilty to one count of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846 and one count of aiding and abetting an attempt to manufacture methamphetamine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. The district court sentenced Tony Oldham to 151 months of imprisonment, a four year period of supervised release, and to pay $10,000 in restitution. Melinda Oldham was sentenced to 60 months of imprisonment, a four year term of supervised release, and to pay $10,000 in restitution. The Oldhams now appeal their sentences to this Court.

## II. Amount of Drugs

In cases such as this one where no controlled substance is recovered, the Sentencing Guidelines instruct the district court to "approximate the quantity of controlled substance" by considering "for example ... the size or capability of any laboratory involved." United States Sentencing Guidelines ("U.S.S.G.") § 2D1 .1, comment (n. 12). Accordingly, the district court considered the testimony of DEA Agent Tony King and forensic chemist Robert Krefft in order to determine how much methamphetamine the Oldhams might have produced.

Tony King testified that 1000 tablets of pseudoephedrine typically yield anywhere from one-half ounce to one ounce of methamphetamine or fourteen to eighteen grams. Based on this ratio, King concluded that the 3800 tablets found in the Daniels' trailer would yield 53.2 grams to 106.4 grams of methamphetamine.

Robert Krefft testified that the maximum theoretical yield that the Oldhams could have produced was 209.8 grams. He estimated that the Oldhams could have reasonably produced 50% of the maximum yield or 104 grams of methamphetamine given their equipment and level of experience. On cross examination he admitted that it would be possible to get a 10% yield if you were "very careless and in a big hurry and had no experience ..." (JA at 351.)

After weighing the evidence set forth by the two experts, the district court decided to accept Agent King's estimate of 53.2 grams instead of Robert Krefft's estimate of 104 grams because this case involved mandatory minimum sentences. We review the district court's finding of the quantity of drugs that would have been manufactured for clear error. *See United States v. Walker,* 160 F.3d 1078, 1090 (6th Cir.1998).

On appeal, Tony and Melinda Oldham argue that the district court erred because it failed to err on the side of caution when determining the amount of methamphetamine that the Oldhams could have produced. Citing *United States v. Flowal,* 163 F.3d 956, 960 (6th Cir.1998), they argue that based on Robert Krefft's admission that a "very careless" person who had "no experience" and "was in a big hurry" could have produced a 10% yield, the district court should have found that Tony Oldham would have only produced 10% of the maximum yield or 20.98 grams.

■ The Oldhams are correct that district courts should err on the side of caution when they estimate the amount of a drug that could have been manufactured. However, this standard does not require courts to stretch the evidence in order to arrive at the lowest possible estimate. Although it is true that Tony Oldham had never manufactured methamphetamine on his own and exhibited some carelessness

by placing a mixture of chemicals on a kerosene heater, these facts alone do not support the 20.98 gram estimate that the Oldhams advocate. As noted above, Robert Krefft's 10% of maximum yield scenario was based on a person who had *"no* experience," "was in a *big* hurry" and was "very careless." This characterization does not describe Tony Oldham, who, although careless, did have *some* experience manufacturing methamphetamine and was not necessarily in a "big hurry." Accordingly, the district court did not commit clear error when it found that the Oldhams could have produced 53.2 grams of methamphetamine.

## III. Apprendi

Tony and Melinda Oldham also contend that their sentences should be reversed because the quantity of the methamphetamine that they intended to produce was not submitted to a jury and subjected to proof beyond a reasonable doubt. In support of this argument the Oldhams cite the case of *Apprendi v. New Jersey* in which the Supreme Court recently held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). Since neither of the Appellants raised this issue at sentencing, they must demonstrate plain error in order to garner a reversal. *See United States v. Page,* 232 F.3d 536, 543 (6th Cir.2000).

■ The Oldhams have not met this burden. Although the determination of the amount of methamphetamine that the Oldhams intended to produce affected their sentences, this determination need not be submitted to a jury for proof beyond a reasonable doubt because it did not increase the penalty beyond the prescribed statutory maximum. The crimes of which the Oldhams were convicted, conspiracy and attempt to manufacture methamphetamine, carry a maximum statutory penalty of 240 months independent of the quantity involved. *See* 21 U.S.C. § 841(b)(1)(C). Since the district court sentenced Tony and Melinda Oldham to 151 and 60 months of imprisonment respectively, it is clear that the district court's determination of the amount of methamphetamine that might have been produced did not increase the penalty beyond the 240 month statutory maximum. Accordingly, the district court did not commit plain error (or any error at all) by failing to submit this determination to a jury for proof beyond a reasonable doubt. *See United States v. Munoz,* 233 F.3d 410, 413–14 (6th Cir. 2000); *United States v. Aguayo–Delgado,* 220 F.3d 926, 934 (8th Cir.2000) (Sentences "within the statutory range authorized by 841(b)(1)(C) . . . are permissible under *Apprendi . . .* even where the drug quantity was not charged in the indictment or found by the jury.").

## IV. Minor Role Adjustment

■ Sentencing Guideline § 3B1.2 (b) provides that the sentencing court shall reduce the offense level of minor participants. A minor participant is defined as "any participant who is less culpable than most other participants, but whose role cannot be described as minimal." *See* U.S.S.G § 3B1.2, comment (n. 3); *United States v. Lloyd,* 10 F.3d 1197, 1220 (6th Cir.1993).

At sentencing the district court found undisputed evidence that Melinda Oldham gathered some of the components that were necessary to manufacture methamphetamine. Based on these activities and others, the district court held that Melinda Oldham was (1) less culpable than

Tony Oldham, the primary actor in this scheme; (2) as culpable as Michael Daniel, who drove Tony Oldham to steal the anhydrous ammonia; and (3) more culpable than Jennifer Daniel who agreed to allow the Oldhams to use her trailer to produce methamphetamine. The district court concluded that Melinda Oldham was not less culpable than *most* of the other participants. This Court reviews the district court's ruling on the defendant's role in an enterprise for clear error. *See United States v. Perry*, 908 F.2d 56, 58 (6th Cir. 1990).

On appeal, Melinda Oldham argues that she was a minor participant in the crimes of which she was convicted and that her offense level should be reduced. Mrs. Oldham cites a series of cases in which defendants received some reduction in their offense level due to their limited role in their respective crimes. *See United States v. Miller*, 56 F.3d 719 (6th Cir.1995); *United States v. Ledezma*, 26 F.3d 636 (6th Cir. 1994); *United States v. Cochran*, 14 F.3d 1128 (6th Cir.1994). She argues that since she played a smaller role in the production of methamphetamine than these defendants played in their respective crimes, she should also receive a offense level reduction.

Mrs. Oldham's analysis misses the point. As noted above, the relevant inquiry in determining whether a defendant is a minor participant is not whether she is less culpable than those who committed other crimes, but whether she is less culpable than the most of the other participants in the crime in which she was involved. Melinda Oldham has presented no evidence to suggest that she was less culpable than Jennifer Daniel or Michael Daniel. Therefore, we affirm the district court's ruling that Melinda Daniel was not a minor participant.

## V. Restitution

At sentencing, the district court held Melinda Oldham and the three other defendants jointly and severally liable to pay $10,000 in restitution damages to the insurer of the damaged trailer. On appeal, Melinda Oldham contends that the district court erred by ordering her to pay restitution. Citing *United States v. Dunigan*, Mrs. Oldham argues that the restitution order should be vacated because there is not sufficient evidence to indicate that she has the ability to pay restitution. 163 F.3d 979, 981 (6th Cir.1999). Since Mrs. Oldham has raised this issue for the first time on appeal, we review the district court's ruling for plain error. *See United States v. Cox*, 957 F.2d 264, 267 (6th Cir.1992).

It is well established that the ability to pay is one factor the court should consider when determining restitution. *See* 18 U.S.C. § 3663(a)(1)(B)(2). The *Dunigan* case that Mrs. Oldham cites involved an indigent defendant who was ordered to pay $311,605 over three years. 163 F.3d at 981. On appeal, this Court vacated the restitution order on the grounds that the district court had "absolutely no basis in the record" to conclude that Dunigan would be able to satisfy the obligation. *Id.* at 982. Mrs. Oldham's case, however, contains a much different set of facts. Unlike the defendant in *Dunigan*, Mrs. Oldham faces a maximum penalty of only $10,000. Since her liability for these damages is joint and several with three other defendants, her ultimate burden may be considerably less than $10,000. Furthermore, although Melinda Oldham does not have a strong history of employment, her presentence report indicates that she has reported completing a GED program and that she does not have any substantial debts. Given these facts, the district court had reason to believe that Mrs. Oldham

will eventually be able to fulfill her obligation.

We do not believe that the district court's order requires Mrs. Oldham to pay off all of her debt immediately. Although the court ordered Mrs. Oldham to begin paying restitution "immediately" the court also issued a special instruction waiving the defendants' liability for interest on the restitution damages. (J.A. at 46.) This arrangement will effectively allow Mrs. Oldham and the other defendants to meet their obligations over time.

## VI. Failure to Consider Other Departures

■ At sentencing, Melinda Oldham received a criminal history category of III for prior offenses including driving on a suspended license, passing bad checks, and trafficking in a simulated controlled substance (acetaminophen). On appeal, Melinda Oldham argues that under U.S.S.G § 4A1.3 she is eligible for a downward departure because the guidelines seriously overstate her criminal history. Specifically, Mrs. Oldham argues that placement in criminal history category III overstates her criminal history because it is based on the number of her past offenses and does not adequately take into consideration the minor nature of these offenses. She points out that her offenses were all considered misdemeanors under Kentucky law, that she served a total of 56 days in jail for these crimes, and that the total loss associated with these crimes was $150. She contends that the district court erred by failing to consider this departure and by failing to grant it.

However, Mrs. Oldham fails to mention that the reason why the district court did not consider this departure is because she did not raise it at sentencing. By failing to raise this issue at sentencing Mrs. Oldham waived her opportunity to argue for a downward departure pursuant to § 4A1.3. *See United States v. Field,* 39 F.3d 15, 21 (1st Cir.1994); *United States v. Bollis,* 2000 WL 263343 at *4, 208 F.3d 215 (6th Cir. Feb.29, 2000) (unpublished) (defendant waives right to a downward departure by failing to raise the departure before the district court). Since Mrs. Oldham waived these arguments at sentencing, we will not consider them on appeal.

## VII. Career Criminal

■ The United States Sentencing Guidelines provide for an increase in the offense level of career offenders. According to Section 4B1.1,

A defendant is a career criminal if (1) the defendant was at least 18 years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Applying these Guidelines, the district court sentenced Tony Oldham as a career offender based on Oldham's two burglary convictions outlined in paragraphs 40 and 41 of his pre-sentence report. The report states that Tony Oldham committed his first burglary offense on October 31, 1985, when he and co-defendant Kimberly Gootee Gish burglarized a residence located in Davies County, Kentucky. Oldham's second offense occurred hours later when he and Gish burglarized another residence in Henderson County, Kentucky.

On appeal, Mr. Oldham points out that prior sentences in "related cases" are treated as one sentence for the purpose of calculating whether a defendant has the two prior felony convictions that are necessary for a career criminal enhancement. *See* U.S.S.G. 4A1.2(a)(2). Mr. Oldham as-

serts that since his two felony sentences were related, they should have been treated as one conviction. He submits that this one conviction is not sufficient to make him a "career criminal."

In support of this theory, Mr. Oldham argues that his felony convictions are related because they occurred on the same day, involved the same defendants, and were discovered in the same investigation. He also points out that the only reason why these cases were not consolidated for trial and sentencing is that Kentucky law does not allow the consolidation of crimes that were committed in different jurisdictions. *See* Kentucky R.Crim. P., RCR 6.18 and RCR 9.12. Since the defendants did not raise this issue before the district court, we review the district court's determination for plain error. *United States v. Williams*, 53 F.3d 769, 770 (6th Cir.1995).

According to Section 4A1.2 of the Sentencing Guidelines, "[P]rior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing ...." U.S.S.G. 4A1.2, comment (n.3). In order to show that the district court committed plain error when it held that his prior burglaries are not related, Mr. Oldham must demonstrate that these two offenses plainly fall into at least one of these three categories. He has not done so.

First, regardless of the reason, it is clear that these two crimes were not "consolidated for trial or sentencing." Second, although these two crimes did take place on the same day, they did not take place on the "same occasion" because they occurred at different times, in different locations, and were committed against different victims. *See United States v. Jones*, 899 F.2d 1097, 1101 (11th Cir.1990) (affirming a district court's finding that two prior bank robberies committed ninety minutes apart did not take place on the same occasion).[1] Third, although Mr. Oldham asserts that he committed both of these crimes with the same co-defendant, he has not shown that his two offenses are plainly "part of a single common scheme or plan."

In *United States v. Irons*, this Circuit held that two convictions are part of a "single common scheme or plan" when the commission of one crime entails the commission of the other or when the crimes were jointly planned. 196 F.3d 634, 638 (6th Cir.1999). In this case, it is clear that the commission of one burglary did not entail the commission of the other. Furthermore, Tony Oldham has not offered sufficient evidence to prove that the crimes were jointly planned. As the Court pointed out in *Irons*, "[n]either close geographic or temporal proximity commands a finding that the defendant jointly planned the crimes." Id. at 640 (citing *United States v. Jones*, 899 F.2d 1097, 1101 (11th Cir. 1990) (affirming the lower court's finding that two prior bank robberies committed ninety minutes apart were not part of a common scheme or plan)). Accordingly, the district court did not commit plain error in sentencing Tony Oldham as a career criminal.

1. In *United States v. Brady*, 988 F.2d 664 (6th Cir.1993), the Sixth Circuit interpreted a similar provision of the Armed Career Criminal Act and held that "offenses committed by a defendant at different times and places against different victims, although within an hour of each other, are separate and distinct criminal episodes." *See id.* at 669. Although this holding has the illogical effect of turning a single night's activities into a career, it is the law of this Circuit. *See id.* at 675–676 (Jones, J., dissenting). Given this Court's decision in *Brady*, the district court's finding that Mr. Oldham's offenses were not committed on the same occasion is not plainly erroneous.

## VIII. Conclusion

For the reasons stated above, we AFFIRM the district court's decision.