*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0054p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 04-6117

CORTEZ ALFORD,

*Defendant-Appellant.*

>

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 03-00107—Curtis L. Collier, Chief District Judge.

Submitted: January 25, 2006

Decided and Filed: February 10, 2006

Before: SILER, SUTTON, and COOK, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Lee Ortwein, ORTWEIN & ORTWEIN, Chattanooga, Tennessee, for Appellant. Steven S. Neff, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

---

## OPINION

---

SILER, Circuit Judge. Defendant Cortez Alford pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Alford to the 10-year statutory maximum. Alford appeals his sentence, alleging: (1) improper judicial fact-finding in violation of *United States v. Booker*, 125 S.Ct. 738 (2005); (2) error in sentencing as if the Guidelines were mandatory; and (3) error in determining that two of his previous convictions were unrelated for purposes of sentencing. For the following reasons, we AFFIRM.

## BACKGROUND

In 1999, responding to a report of shots fired, Chattanooga police stopped Alford and discovered a firearm and ammunition on his person. After an indictment was returned and pursuant to a plea agreement, Alford pled guilty to one count of being a felon in possession of a firearm. Under the Sentencing Guidelines, Alford's imprisonment range was 110-120 months. This calculation reflected a base offense level of 24 under USSG § 2K2.1(a)(2), considering Alford's two previous felony convictions for crimes of violence, and included a four-level upward adjustment

1

under USSG § 2K2.1(b)(5) for possession of a weapon in connection with another felony offense (in this case, an aggravated assault). Over Alford's objections, the district court accepted the calculations of the Presentence Report ("PSR") and concluded that the correct Guidelines range was 110-120 months. The court sentenced Alford to 120 months imprisonment, the statutory maximum for his offense, stating that his long criminal history showed he was a "danger to society."

## DISCUSSION

### 1. Waiver of Rights

Initially, we must consider the government's contention that Alford has waived any right to object to the imposition of a sentence within the Guidelines range by agreeing to such a sentence as part of his negotiated plea agreement. The plea agreement contains the following language:

> The defendant's sentencing will be governed by the United States Sentencing Guidelines and any term of imprisonment imposed under the Guidelines is nonparolable. The District Court will determine the appropriate sentence under the Sentencing Guidelines, and this determination will be based upon the entire scope of the defendant's criminal conduct, criminal history, and pursuant to other factors and guidelines set forth in the Sentencing Guidelines.

Furthermore, at the rearraignment hearing, Alford acknowledged he understood that the district court must "follow [the Sentencing Guidelines] in determining the sentence in a criminal case" and that this Guidelines sentence could only be calculated after the preparation of a PSR. The district court noted, "I'm quite sure Mr. Ortwein [the defense attorney] has told you that the Court is bound by the sentencing guidelines."

In support of its argument that Alford has waived his right to object to any sentence within the Guidelines range, the government relies heavily on *United States v. Bradley*, 400 F.3d 459 (6th Cir. 2005). The plea agreement in *Bradley* contained language by which the defendant agreed to be sentenced under the Guidelines and also a clause waiving the defendant's right to appeal. 400 F.3d at 461. After the Supreme Court's decision in *Booker*, the defendant in *Bradley* appealed, arguing that resentencing was appropriate since the district court mistakenly applied the Guidelines as mandatory. *Id.* at 462. We held, however, that "the terms of the plea agreement themselves prevent us from granting Bradley's request," noting that "developments in the law later expand[ing] a right that a defendant has waived in a plea agreement . . . do[] not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature." *Id.* at 463. Thus, if Alford's plea agreement is deemed a waiver, the intervening decision in *Booker* is not a valid ground upon which to appeal.

However, the plea agreements in this case and *Bradley* have one significant difference: the agreement presently before this court, unlike the one in *Bradley*, contains no waiver of appeal clause. The absence of such a waiver is dispositive. *See United States v. Puckett*, 422 F.3d 340, 343 (6th Cir. 2005); *United States v. Amiker*, 414 F.3d 606, 607-08 (6th Cir. 2005). The absence of an express waiver of a defendant's right to appeal in his plea agreement means "*Bradley* is inapplicable." *Puckett*, 422 F.3d at 343 (citing *Amiker*, 414 F.3d at 607). "The mere fact that [the defendant] agreed to be, and was, sentenced pursuant to the Sentencing Guidelines, does not preclude him from raising on appeal an alleged *Booker* error regarding his sentence." *Id.* (citation omitted); *see Amiker*, 414 F.3d at 607 ("[W]e think this language in *Bradley* is best interpreted as merely additional rationale serving only to buttress the court's decision that the defendant had waived his right to appeal."). Therefore, Alford has not waived his right to appeal an alleged *Booker* error regarding his sentence.

## 2.  Judicial Fact-Finding

Alford's initial argument is that his sentence violated the *Booker* line of cases because the district court increased his sentence using facts that he did not admit.  Alford points to three specific instances of allegedly improper fact-finding by the district court: (1) its determination that prior offenses committed by Alford satisfied the definition of "crime of violence" in USSG § 4B1.2; (2) its determination that the crimes of violence committed by Alford were not part of a single common scheme or plan; and (3) its finding that the facts within the plea demonstrated that Alford committed an aggravated assault while in possession of a firearm.

First, Alford does not claim that his contested prior convictions are not crimes of violence under USSG § 4B1.2.  Instead, he simply contends that by analyzing his prior convictions to determine if they are crimes of violence, the district court impermissibly engaged in judicial fact-finding in violation of *Booker* since he did not admit to those facts in his guilty plea.  However, *Booker* makes clear that "[a]ny fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S.Ct. at 756 (emphasis added).  Keeping with this language, we have repeatedly held that "certain aspects of the character of prior convictions are so basic as to be implicit in the fact of a prior conviction." *United States v. Hollingsworth*, 414 F.3d 621, 623 (6th Cir. 2005) (citation omitted). Included among these "certain aspects" of prior convictions is a determination as to whether the "prior conviction was for a crime of violence." *Id.* at 624.  Therefore, the district court did not err in making a determination that Alford's previous convictions for aggravated assault and robbery (at gunpoint) constituted crimes of violence.

As for the district court's determination regarding whether Alford's crimes of violence were related, meaning part of a single common plan or scheme, this question appears substantially similar to the determination of whether a conviction constitutes a crime of violence.  Moreover, this court, in dealing with a similar question has held:

> [D]eterminations by a district court that prior felony convictions exist and were committed on different occasions, are so intimately related that the "different occasions" requirement of [18 U.S.C.] § 924(e) sufficiently comes within the exception in *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] for a prior conviction. Thus, it is our determination that this issue need not be pled in an indictment, submitted to a jury, and proved beyond a reasonable doubt.  The "different occasions" language involves the issue of recidivism, "a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence."  Like the fact of a prior conviction, it is not a fact that pertains to the commission of the offense for which the defendant is presently charged.

*United States v. Burgin*, 388 F.3d 177, 186 (6th Cir. 2004) (citations omitted); *see also Hollingsworth*, 414 F.3d at 623-24 (reaffirming the holding and basic principles of *Burgin*). Although this case is not dealing with the "different occasions" requirement of § 924(e), the same principles would apply to a determination of whether a sentence is "related" under USSG § 4A1.2(a)(2).  As in *Burgin*, the district court in this instance was attempting to determine the scope of Alford's recidivism, that is, whether he was responsible for multiple instances of crimes of violence or whether this was only one single, isolated incident.  This inquiry, like *Burgin*, does not pertain to the offense for which Alford was charged.  Ultimately, the issues appear similar enough that *Burgin* controls and, therefore, the district court did not err by inquiring into whether Alford's previous convictions for crimes of violence were related.  The question of whether the district court correctly determined that these crimes were unrelated will be dealt with below.

Lastly, we must examine the district court's four-level upward adjustment under USSG § 2K2.1(b)(5) for Alford's possession of a firearm in connection with another felony offense. *See* USSG § 2K2.1(b)(5). Unlike the findings above, this finding does not concern a prior conviction. Therefore, any facts necessary to support the ultimate sentence must be admitted by the defendant. *See Booker*, 125 S.Ct. at 756. Alford contends that the district court engaged in impermissible judicial fact-finding when it increased his sentencing range four levels for possession of a weapon in connection with another felony offense. However, the determination that he possessed the weapon in connection with another felony offense, namely an aggravated assault in 1999, is clearly supported by the facts to which Alford admitted. In the plea agreement, Alford stipulated to the following facts concerning his plea:

> On January 26, 1999 . . . officers were called to 1720 Hardy Street . . . on a disorder with shots fired. Upon arrival police spoke with the victim who stated that while he was walking in the 1900 block of Heaton Street he noticed Cortez Alford looking at him. When the victim told his friend that the man was Cortez Alford and that he had been having problems with him, Cortez Alford pointed the gun at the victim and fired the weapon at him. The victim stated that he was afraid for his life and started running. He ran to a nearby apartment and called police. The victim gave a description of Alford and told them what Alford was wearing. Officers spotted a suspect nearby who fit the description. The suspect was . . . Cortez Alford. When police requested Alford show his hands, he did not initially comply. The officers observed the defendant possess[ed] a firearm and ammunition.

Based upon these facts, a determination that Alford's conduct toward the victim constituted an aggravated assault cannot be deemed clearly erroneous. *See United States v. Webb*, 335 F.3d 534, 537 (6th Cir. 2003) ("[T]his court has held that our standard of review of a district court's application of provisions of the Sentencing Guidelines to the facts should be treated deferentially and should not be disturbed unless clearly erroneous."); TENN. CODE ANN. § 39-13-102 (An aggravated assault, a felony, is committed where a person intentionally or knowingly causes another to reasonably fear imminent bodily injury and uses or displays a deadly weapon in doing so). Accordingly, the four-level upward adjustment was justified on the basis of the facts that Alford admitted.

### 3. *Booker* Claim

Alford's next argument is that the district court violated his Sixth Amendment rights by sentencing him as if the Guidelines were mandatory. While the government concedes that the district court erred by treating the Guidelines as mandatory, it argues that this error was harmless and that Alford would have received the same sentence in any event. Since the government concedes that Alford's *Booker* argument is preserved, "we must determine whether any error in sentencing was harmless, as opposed to conducting a plain error analysis." *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (citations omitted). "Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless -- *i.e.* any such error 'did not affect the district court's selection of the sentence imposed.'" *Id.* (citation omitted).

In cases where the district court sentenced a defendant as if the Guidelines were mandatory, the only instances where we have found harmless error, as opposed to plain error, in the aftermath of *Booker* are cases in which "a district court imposes alternative, identical sentences, one under a regime in which Guidelines enhancements are not mandatory." *United States v. Christopher*, 415 F.3d 590, 593 (6th Cir. 2005) (citations omitted). Alford was not given an alternative sentence in the present case. Nonetheless, the district court's error was harmless. At the sentencing hearing, the district court sentenced Alford to the statutory maximum of 120 months in prison, which was

at the top of the Guidelines range for Alford – 110-120 months. In so sentencing, the court ignored Alford's presentation of mitigating factors, such as his family status, and his pleas for lenience. The district court stated:

> Mr. Alford, you have led a life replete with criminal activity. I am looking at your criminal history and, according to the presentence report, it started when you were 15 years old . . . . [the court then goes through Alford's lengthy criminal history]
>
> You are 27 years old now, and the Court believes that based upon your prior history -- and [the] Court has just recounted some of it -- that at this stage in your life you are a danger to society. And the Court believes that a period of incarceration is necessary to protect society from actions that you have engaged in in the past and the Court believes that you are likely to engage in in the future. So the Court is going to impose a sentence at the top of the guidelines range here, which is 120 months. That's the statutory maximum for your offense.
>
> When you get out, you will be in your mid-30's . . . . And the Court hopes that you will reflect upon what you've done with your life and how you wound up with such a sentence and, when you return to society, you'll come back as a law-abiding person prepared to live by the standards of society.

As this dialogue shows, the district court wanted to send a message to Alford with a tough sentence, the statutory maximum of 120 months. We are convinced that a more lenient sentence would not be imposed on remand given the district court's actions and explanation. Thus, the district court's error of treating the Guidelines as mandatory did not affect its selection of the sentence imposed.

**4. Related Offenses: Single Common Scheme or Plan**

Finally, we must examine Alford's claim that the district court miscalculated his sentence by considering two of his convictions unrelated under USSG § 2K2.1(a)(2). Section 2K2.1(a)(2) states that a defendant should get a base offense level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." Application Note 12 to that section allows "only those felony convictions that receive criminal history points under § 4A1.1(a), (b), or (c)" to be used in the calculation of the base offense level. Accordingly, § 4A1.2(a)(2) adds that "[p]rior sentences imposed in unrelated cases are to be counted separately" while "[p]rior sentences in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)." Lastly, Application Note 3 to § 4A1.2 states that "prior sentences are considered related if they resulted from offenses that. . . were part of a single common scheme or plan." Alford argues that the two offenses which the district court used to justify a base offense level of 24, in accord with § 2K2.1(a)(2), were actually one offense since they were part of a single common plan or scheme.

In his argument to the district court, Alford summarized the facts concerning the prior convictions. In 1994, Alford armed himself with the intention of committing a series of robberies and waited outside of a known drug dealer's residence in order to steal the money of people intending to purchase drugs. Alford proceeded to rob the occupants of a vehicle who had parked in front of the residence and then immediately fled the scene. After fleeing 300-400 feet, Alford came across a man in an alley that Alford knew to be a drug user. Assuming this man would have drugs or money on his person, Alford robbed the man and, when the man resisted, Alford shot him in the leg. Ultimately, Alford was charged with robbery for the first incident and aggravated assault for the second. Alford asserts that his common plan or scheme was "[t]o rob as many people as he came across" that day. Despite Alford's arguments, the district court concluded:

[T]he defendant's scheme or plan was to rob people who showed up at the drug house to purchase drugs, because the defendant expected that those people either had drugs in their possession or money on their person. That's what happened with regard to the first incident. Those people showed up to purchase drugs, and they did have money. Instead of continuing, though, on this common scheme, that is, continuing to wait outside the house to rob additional people coming to buy drugs, the defendant left the vicinity and went approximately 300 feet away. And while he was 300 feet away, he actually encountered someone else. I don't know the exact location there, but I don't think it would be rational to assume that this person was on his way to that very same drug house. So I don't believe that the second robbery was a part of the common scheme or plan to rob people coming into the drug house. Therefore the Court denies the defendant's motion . . . to treat[] these two prior robberies as one incident. . . .

We review a district court's ruling that two previous convictions are unrelated for clear error. *United States v. Horn*, 355 F.3d 610, 613 (6th Cir. 2004). "[C]rimes are part of the same scheme or plan only if the offenses are jointly planned, or, at a minimum, the commission of one of the offenses necessarily requires the commission of the other." *Id.* at 614 (citing *United States v. Irons*, 196 F.3d 634, 638 (6th Cir. 1999)). Offenses are not necessarily related merely because they were committed within a short period of time or are part of a crime spree. *Id.* at 614-15 (citations omitted). For example, in a case where a defendant burglarized two houses within hours of each other, "[w]e held that the crimes did not take place on the same occasion because they occurred at different times, in different locations, and were committed against different victims." *Id.* at 615 (citing *United States v. Oldham*, 13 Fed. Appx. 221, 226-27 (6th Cir. 2001)) (internal quotations omitted). The crimes at issue in this case, while committed by Alford on the same night, appear unrelated. As the district court noted, Alford began the night with the intention of robbing individuals entering a particular drug house and only when fleeing the scene came across his second victim. Far from having planned out the second robbery, Alford simply happened to stumble upon his victim. Furthermore, the victims were assaulted in different locations (one an alley, the other in front of a drug house) and there is no evidence that the commission of the first offense required commission of the second. Given these factors, the district court's decision that the two offenses were not part of a common plan or scheme was not clearly erroneous.

AFFIRMED.