**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0165n.06
Filed: February 28, 2007

**No. 05-6566**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DEAN DIFILIPPO, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: KENNEDY, MARTIN and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Dean Difilippo contends that the district court clearly erred in finding that four prior controlled-substance offenses were unrelated. Disagreeing, we affirm.

I.

On October 13, 2004, a federal grand jury returned a seven-count indictment against Difilippo and three co-defendants. Six of the seven counts implicated Difilippo for his involvement in setting fire to two Chattanooga, Tennessee businesses.

This was not Difilippo's first encounter with the law. His presentence report identified seven prior criminal convictions, including four violations of the Pennsylvania Drug Act. Three of the violations stemmed from sales of relatively small values of cocaine to an undercover police officer:

$350 on July 27, 1989; $600 on August 11, 1989; and $350 on February 9, 1990. The fourth violation stemmed from a substantially larger sale to the same undercover officer: $14,500 on February 26, 1990.

Police arrested Difilippo after the last sale. The state court docketed each violation separately and did not enter a consolidation order to combine the cases. On February 23, 1991, after Difilippo pleaded guilty, the court sentenced him to concurrent terms of imprisonment for each violation—9 to 18 months for the first three, 15 months to 5 years for the fourth.

Before his scheduled trial on the federal charges, Difilippo pleaded guilty to two counts of aiding and abetting arson in return for which the government dismissed the remaining four charges. At his sentencing hearing, the district court determined that the four prior Pennsylvania controlled-substance convictions were unrelated, *see* U.S.S.G. § 4A1.2, making Difilippo a career offender under § 4B1.1 of the sentencing guidelines. Career-offender status increased Difilippo's guidelines offense level from 23 to 29 and ultimately led to an advisory guidelines range of 151–188 months. After considering the § 3553(a) factors, the district court sentenced Difilippo to a 130-month prison term. On appeal, Difilippo claims that the district court erred in finding his state controlled-substance convictions unrelated.

## II.

The federal sentencing guidelines treat adult defendants as career offenders if they are convicted of a "crime of violence" and if they "ha[ve] at least two prior felony convictions of . . . a

controlled substance offense." U.S.S.G. § 4B1.1(a). When a defendant satisfies these conditions, the guidelines provide alternative offense levels, which apply whenever they exceed the offense level "otherwise applicable" if the defendant were not deemed a career offender. *Id.* § 4B1.1(b).

Arson is a crime of violence. *See id.* § 4B1.2(a)(2) (defining "crime of violence" to include "arson"); *id.* § 4B1.2 cmt. n.1 (directing courts to count convictions for "aiding and abetting" listed offenses as crimes of violence). And the arson statute to which Difilippo pleaded guilty carries a maximum sentence of 20 years' imprisonment. *See* 18 U.S.C. § 844(i). The guidelines instruct district courts to assign an offense level of 32 to career offenders facing this much jail time, *see* U.S.S.G. § 4B1.1(b)(C), an instruction the district court followed before granting Difilippo a three-level reduction for acceptance of responsibility to arrive at a total offense level of 29.

Up to this point, no one complains about the district court's guidelines calculation. The question is whether the court clearly erred in next counting Difilippo's four prior felony controlled-substance convictions *separately* and thus in treating him as a career offender. *See United States v. Horn*, 355 F.3d 610, 613 (6th Cir. 2004) (holding that district court's relatedness determinations are reviewed for clear error). The career-offender guideline advises courts to consult the criminal-history guideline when "counting . . . convictions." U.S.S.G. § 4B1.2 cmt. n.3. And that guideline says that "[p]rior sentences . . . in unrelated cases are to be counted separately," while "[p]rior sentences . . . in related cases are to be treated as one sentence." *Id*. § 4A1.2(a)(2). Application note 3 to this guideline, more helpfully, says that "[p]rior sentences are related if they resulted from

offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing."

Measured by this standard, the district court's relatedness finding must be upheld. As to the first factor, the prior offenses occurred on separate occasions—July 27 and August 11 of 1989 and February 9 and 26 of 1990. As to the second factor, the offenses were not part of a "single common scheme or plan" because the offenses were not "jointly planned" or "at least" so connected "that the commission of one . . . entail[ed] the commission of the other[s] as well." *United States v. Irons*, 196 F.3d 634, 638 (6th Cir. 1999) (internal quotation marks omitted). No evidence shows that Difilippo and the undercover officer "jointly planned" the four offenses. No evidence shows that each sale "entailed," or for that matter inevitably led to, the commission of the next sale. And no evidence shows that the three relatively small cocaine transactions were somehow an interconnected prelude to the final, substantially larger $14,500 sale. *See United States v. Carter*, 283 F.3d 755, 757–58 (6th Cir. 2002) (finding no common scheme or plan in three prior state convictions for possession with intent to sell cocaine; all three sales took place within a single month, the defendant made the sales to the same individual, the same judge imposed sentences for the three offenses on the same day and the sentences were set to run concurrently). As to the third factor, the state court never consolidated the charges.

Difilippo responds that Pennsylvania "effectively consolidated" his prior offenses by indicting him on them at the same time, accepting his guilty plea to each on the same day and ordering the sentences for all four offenses to run concurrently. But these facts, in the absence of

a consolidation order, do not "demonstrate an intention on the part of the trial court to consolidate the cases." *Carter*, 283 F.3d at 758. For one, a "judgment . . . pronounced on the same day with sentences to run concurrently, without more, does not establish that . . . offenses were consolidated." *Id*. For another, Difilippo's decision to plead guilty to each offense at the same time does not show that the *State* intended to consolidate the charges. For still another reason, Difilippo does not claim that the offenses were part of a single indictment, and the fact that each was assigned a separate docket number indicates that they were not. If anything, bringing four separate cases against a single defendant when the cases were indicted "at the same time" suggests that the State affirmatively chose to separate, not consolidate, the charges.

Difilippo next challenges the relatedness finding on a ground that he did not raise in district court—that the trial court violated his Sixth Amendment rights by making a judicial fact-finding that his prior convictions were unrelated. For several reasons, he cannot establish that this was plain error. As an initial matter, *United States v. Alford*, 436 F.3d 677 (6th Cir. 2006), permitted the district court to do exactly what it did. There, we held that district courts do "not err by inquiring into whether . . . prior convictions . . . [are] related" under § 4A1.2(a)(2). *Id*. at 681 (explaining that such an inquiry fits within the "prior conviction" exception to *Booker*). No less importantly, *Booker* permits this kind of fact-finding so long as it is used in connection with an advisory guidelines regime. *See United States v. Booker*, 543 U.S. 220, 233 (2005) ("If the Guidelines . . . could be read as merely advisory provisions that recommended, rather than required, the selection of a particular sentence in response to differing sets of facts, their use would not implicate the Sixth Amendment.").

- 5 -

Here, the district court was operating under advisory guidelines (as demonstrated by its decision to sentence Difilippo below the guidelines range), and Difilippo pleaded guilty to a crime punishable by 5 to 20 years' imprisonment, *see* 18 U.S.C. § 844(i). Difilippo's insistence that the district court's relatedness inquiry fell outside of the prior-conviction exception to the Sixth Amendment's limitation on judicial fact-finding is thus misplaced. No error occurred, much less a plain error.

III.

For these reasons, we affirm.