**NOT RECOMMENDED FOR PUBLICATION**
File Name: 07a0769n.06
Filed: November 1, 2007

**No. 06-1140**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| Musa Abdallah Jebril, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SILER, COOK, and GRIFFIN, Circuit Judges.

**SILER,** Circuit Judge. Musa Abdallah Jebril appeals his sentence for several convictions. He argues that his earlier state conviction was not a "prior sentence" within the meaning of USSG § 4A1.2(a); rather, he contends that his prior conviction was part of the instant offense. He further argues that his sentence is unreasonable. For the following reasons, we AFFIRM.

**BACKGROUND**

Jebril was convicted in 2004 of forty-two counts of various charges, including conspiracy, possession of firearms, mail fraud, wire fraud, bank fraud, laundering money, and failure to file federal income tax returns. The Presentence Report (the "PSR") noted that in 2000, a Michigan state court sentenced Jebril to two years probation for Felony False Statements on a Vehicle Title Application and Felony Conspiracy to Pass a False Title (collectively, the "Prior Conviction"). The PSR assessed one criminal history point for the Prior Conviction and two more criminal history

points because Jebril committed a portion of the instant offense while on probation for the Prior Conviction. The Probation Office calculated Jebril's total offense level as twenty-three and his Criminal History Category as II. Thus, the Guidelines range was fifty-one to sixty-three months.

Jebril objected to the calculation of his criminal history, arguing that his Prior Conviction should be treated as a related case pursuant to USSG § 4A1.2(a)(2), but the district court ruled that the Prior Conviction was not related to the instant offense. Jebril also asked the court to weigh the many letters that were submitted to the district court on his behalf, the facts of the case, and Jebril's health. Based on these factors, Jebril asked to be sentenced at the bottom of the recommended Guidelines. Jebril did not, however, explicitly ask the district court to sentence him below the recommended Guidelines.

Prior to sentencing, the district court outlined its reasoning. It noted that it read and considered all of the letters provided. It explained that it could not reconcile the man portrayed in those letters with the defendant it witnessed in court. Eventually, the district court sentenced Jebril to fifty-eight months on each felony count and twelve months on each misdemeanor count, to be served concurrently, and ordered Jebril to pay restitution.

**DISCUSSION**

I. The Prior Conviction

USSG § 4A1.2(a)(1) defines "prior sentence" to mean "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." USSG § 4A1.2(a)(2) continues, stating, "Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be

2

treated as one sentence for purposes of " addition of criminal history points. Then, USSG § 4A1.2, Comment (n.3), provides:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.

The phrases "same occasion" and "common scheme or plan" are not defined in the Guidelines. Crimes are unrelated when they "occurred at different times, in different locations, and were committed against different victims." *United States v. Oldham*, 13 F. App'x 221, 226-27 (6th Cir. 2001) (holding a defendant's convictions for burglarizing homes within hours of each other were "unrelated").

The phrase "common scheme or plan" is one "of intention, implying that [offenses] have been jointly planned, or at least that . . . the commission of one would entail the commission of the other as well." *United States v. Irons*, 196 F.3d 634, 638 (6th Cir. 1999) (quoting *United States v. Ali*, 951 F.2d 827, 828 (7th Cir. 1992)) (holding that separate instances of harassment committed against the same victim were not "related" because the defendant did not jointly plan the crimes). Furthermore, crimes are not necessarily "related" because they "were committed within a short period of time." *United States v. Alford*, 436 F.3d 677, 684 (6th Cir. 2006) (holding that two robberies committed within hours of each other were not part of a "common scheme or plan" when the defendant did not originally plan to rob his second victim). Prior crimes are not considered "related" under USSG § 4A1.2(a)(2) "merely because they are part of a crime spree." *Irons*, 196 F.3d at 638. Nor are prior crimes related "because they were committed to achieve a similar

3

objective." *United States v. Horn*, 355 F.3d 610, 614-15 (6th Cir. 2004) (citing *United States v. Brown*, 209 F.3d 1020, 1024 (7th Cir. 2000) (holding that prior convictions are not "related" simply because the crimes used the same modus operandi, were part of a crime spree, or shared the same motive)). Jebril bears the burden of proving that the prior offense and the instant offense are part of a single common scheme or plan. *See Horn*, 355 F.3d at 614.

Jebril contends that the Prior Conviction is related to the instant offense because they both occurred during January and/or February 1998;[1] because both offenses were committed within the same judicial district, the Eastern District of Michigan; and because they were committed against the same "victim," the Michigan Secretary of State. Jebril further argues that a common scheme or plan existed because he used the same aliases and fraudulent driver's licenses in the commission of both offenses.

We review the district court's ruling that the Prior Conviction is "unrelated" for clear error. *See Alford*, 436 F.3d at 684. The district court did not err. Jebril offered no evidence that the Prior Conviction was planned jointly with the instant offense; rather, the two appear as different schemes to defraud different entities, one being the Michigan Department of Motor Vehicles, the other being the various financial institutions, insurance agencies, and federal agencies in the instant case. Jebril also offers no concrete evidence of temporal connection, arguing only that commission of the Prior Conviction and the beginning of the commission of the instant offense within the same two-month

---

[1]There is a dispute between the parties as to when Jebril's federal conspiracy began. Jebril contends that it began before January 1998 because he acquired the real property used in the conspiracy before that time. The Government rejects this argument. Due to this disparity, it is difficult to determine if the Prior Conviction constituted an intervening arrest under USSG § 4A1.2(a)(2). However, because the Prior Conviction is unrelated for other reasons, we need not resolve the timing dispute, and the consequent issue of intervening arrest, in order to decide this case.

period is sufficient under the law.  It is not.  *See Alford*, 436 F.3d at 684.  It is not enough to contend that the crimes were part of a common scheme or plan because Jebril used the same forged instruments to commit both the Prior Conviction and the instant offense.  Use of the same modus operandi will not suffice.  *See Brown*, 209 F.3d at 1024.  Finally, there is no evidence that Jebril committed the Prior Conviction in furtherance of the instant offense.  *See Irons*, 196 F.3d at 638 .

## II. The Sentence

A sentence within the advisory Guidelines range is presumed reasonable.  *See United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006).  Within the confines of 18 U.S.C. § 3553(a), the district court must consider "the nature and circumstances of the offense," "the history and characteristics of the defendant," and  " the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training and medical care."  *United States v. Webb*, 403 F.3d 373, 384 n.5 (6th Cir. 2005) (internal quotations omitted).  It must also acknowledge the defendant's arguments if he requests a reduced sentence, and it must state why it rejects the defendant's arguments if it does so.  *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006).  We review the district court's imposition of a sentence under the Guidelines for reasonableness substantively and procedurally.  *See United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006).

Here, the district court complied with the above requirements.  It fully and adequately explained its reasons for imposing a sentence within the Guidelines range.  It extensively examined the evidence of Jebril's guilt and noted such during the sentencing hearing.  It also acknowledged, and granted, Jebril's request to be sentenced to a correctional facility close to his family.  Although

Jebril never explicitly asked the court for a downward variance, the court did weigh Jebril's community reputation—the only mitigating evidence presented by Jebril—and gave it little to no weight. Finally, it sentenced Jebril mid-range within the recommended Guidelines range. The sentence was neither substantively nor procedurally unreasonable.

AFFIRMED.