RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0179p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
————————————

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          *v.*

GARY ROBERGE,
          *Defendant-Appellant.*

No. 06-5704

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 04-00070—R. Allan Edgar, District Judge.

Argued: March 5, 2009

Decided and Filed: May 20, 2009

Before: SILER, COOK, and McKEAGUE, Circuit Judges.

————————————

**COUNSEL**

**ARGUED:** John Allen Brooks, LAW OFFICE, Chattanooga, Tennessee, for Appellant. Terra L. Bay, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** John Allen Brooks, LAW OFFICE, Chattanooga, Tennessee, for Appellant. Christopher D. Poole, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

————————————

**OPINION**

————————————

COOK, Circuit Judge. A grand jury indicted Gary Roberge for possessing firearms and ammunition as an unlawful user of controlled substances (Count 1) in violation of 18 U.S.C. § 922(g)(3), attempting to manufacture methamphetamine (Count 2) in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846, possessing equipment and materials that could be used to manufacture methamphetamine with the intent to so use the items (Count 3) in violation of 21 U.S.C. § 843(a)(6), and possessing a firearm in furtherance of drug-

1

trafficking crimes (Count 4) in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Roberge appeals his conviction and sentence, and we affirm.

I.

Detective Duff Brumley obtained a warrant to search Roberge's residence after Roberge's daughter, Yodi, told him that Roberge "cooks" methamphetamine in their basement.  In issuing the warrant, the state judge waived the "knock-and-announce requirement" due to indications that Roberge had firearms and "ha[d] . . . at times, been mentally unstable"—an officer claimed to have taken Roberge to a mental institution, and a 911 recording suggested Roberge threatened a bail bondsman outside his home.

According to Detective Brumley, officers found Roberge asleep in his bed with a loaded assault rifle upon entering his residence.  In the basement, they seized items associated with the manufacture of methamphetamine, including jars containing bilayered liquid, iodine tincture, Coleman fuel cans, muriatic acid, and plastic tubing.  Officers also discovered a loaded shotgun and a rifle.  The Tennessee Bureau of Investigation ("TBI") tested two samples of the bilayered liquid and found methamphetamine in the top layer of each.  The defense's expert witness, a scientist at a forensic toxicology laboratory, also evaluated the samples. He found no methamphetamine in the first sample and trace amounts in the second, but conceded that TBI's testing may have consumed the layer containing methamphetamine in the first sample.

At trial, Yodi Roberge described her father's methamphetamine use and claimed that one or two months before police searched her home, Roberge asked her to buy seven bottles of rubbing alcohol and six or seven boxes of matchbooks.  She said she saw Roberge remove the striker strips from the matchbooks, and Detective Brumley explained that soaking the strips in alcohol produces red phosphorous, a component of methamphetamine.  Yodi also testified that she witnessed Roberge washing glass jars and taking them into the basement, after which she noticed "a real funny smell" and her skin broke out.  Todd Russell, a convicted cocaine dealer who shared a cell with Roberge, testified that Roberge admitted to manufacturing and selling methamphetamine.

The jury found Roberge guilty on all counts, and the court sentenced him to 295 months' imprisonment, a sentence at the top of the Guidelines range.

II.

A.      Sufficiency of the Evidence

Roberge argues that the evidence does not support his four convictions and that the district court erred by denying his motion for acquittal. Because he failed to renew his motion at the close of evidence, "he waives objection to the denial of his earlier motion, absent a showing of a manifest miscarriage of justice." *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998). "A miscarriage of justice exists only if the record is devoid of evidence pointing to guilt." *Id*. (internal quotation marks omitted).

As to his conviction on Count 1 for being an unlawful user of controlled substances possessing a firearm, *see* 18 U.S.C. § 922(g)(3), Roberge asserts that "[t]here was no testimony of [his] drug use . . . on or about the day alleged in the Indictment." Roberge is mistaken. Yodi Roberge testified that he asked her to buy methamphetamine ingredients within a month or two of the search warrant and, according to Russell, Roberge used the methamphetamine he manufactured as "that was the best way for [Roberge] to know if he had good meth or not." The government presented evidence that officers found a functional methamphetamine laboratory in Roberge's basement, where Yodi had seen Roberge use the drug in the past. And Yodi's descriptions of the firearms Roberge had at the time she bought methamphetamine components matched that of the firearms seized from Roberge's property, evincing drug use contemporaneous with possessing firearms.

And the indictment's mention of "on or about" does not require the government to prove that the crimes happened on that exact date "as long as a date reasonably near that named . . . is established." *United States v. Ford*, 872 F.2d 1231, 1236 (6th Cir. 1989). One to two months is reasonably near. *See United States v. Manning*, 142 F.3d 336, 340 (6th Cir. 1998). Roberge cites no authority supporting his position that the government must prove he used drugs on the day authorities seized the firearms, and courts addressing this question concluded the contrary. *See United States v. Moran*, 452 F.3d 1167, 1172 (10th Cir. 2006) ("It is clear that the . . . conviction does not require proof that he was using—and,

presumably, possessing—marijuana at the exact time he possessed the ammunition. Rather, the Government need only show that the drug use was 'contemporaneous with' the possession of the firearm or ammunition to support a conviction under 18 U.S.C. § 922(g)(3)."); *United States v. Mack*, 343 F.3d 929, 933 (8th Cir. 2003) ("[I]t was not necessary to prove that [defendant] was actually smoking marijuana at the time that the officers discovered him in possession of firearms. It was sufficient . . . for the government to demonstrate that [defendant] was a 'user of any controlled substance' during the period of time he possessed the firearms."). The record, therefore, is not "devoid of evidence pointing to guilt" on Count 1. *See Price*, 134 F.3d at 350.

Roberge also disputes the sufficiency of the evidence supporting his conviction on Count 2—attempting to manufacture methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846. But he only argues that the jury, in assessing the testimony regarding the bilayered liquid, should have given more weight to his expert witness's testimony than to that of TBI's. We, however, "do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). And the evidence supporting Roberge's conviction on Count 2 demonstrates that no "miscarriage of justice" resulted: Detective Brumley and Special Agent Shelton testified that Roberge had a methamphetamine laboratory in his basement, and TBI concluded that the two seized jars of bilayered liquid contained methamphetamine. Yodi Roberge also described how, after her father took glass jars into the basement, a "real funny smell" emerged and her skin broke out.

Turning to his conviction on Count 3, Roberge summarily asserts that "[t]estimony at trial showed that the Defendant did not have the necessary components to manufacture methamphetamine." This claim is also meritless. Both Detective Brumley and Special Agent Shelton testified that Roberge possessed components needed to manufacture methamphetamine, and the government need not prove that Roberge had all the materials required to make the drug. *See* 21 U.S.C. § 843(a)(6) (providing that it is unlawful to possess "*any* equipment, chemical, product, or material which may be used to manufacture a controlled substance or listed chemical") (emphasis added); *see also United States v. Yates*, 86 F. App'x 157, 159 (6th Cir. 2004) (concluding that possession of precursor materials for

making methamphetamine—pseudoephedrine pills and lithium batteries—sufficed for a § 843(a)(6) conviction).

Finally, Roberge claims that "[i]f the evidence is insufficient to prove Counts 2 and 3, then Count 4 must fail," but we have already rejected his sufficiency arguments for Counts 2 and 3. Because the record is not "devoid of evidence pointing to guilt," Roberge fails to show a miscarriage of justice and we reject his sufficiency-of-the-evidence challenge.

B.        Jury Instructions

Roberge next challenges two jury instructions. First, he contends that the district court abused its discretion by instructing the jury with the following:

> I would add one thing, however, that with respect to Count 3 here, that the government is not required to prove that the defendant possessed all of the equipment, materials or chemicals or products necessary to manufacture methamphetamine. A person may be found guilty of this offense if the person possesses only some of such items so long as the person knows or has reasonable cause to believe that these items would be used to manufacture methamphetamine.

The district court has "broad discretion in drafting jury instructions," and "[w]e will not reverse . . . unless the jury charge fails accurately to reflect the law." *United States v. Prince*, 214 F.3d 740, 761 (6th Cir. 2000) (internal quotation marks omitted). Relying on *Stirone v. United States*, 361 U.S. 212 (1960), Roberge complains that the above statement amended his indictment by negating the requirement that the government prove all the elements of the crime. *See id.* at 216–17. Roberge misstates the law. Section 843(a)(6) provides that:

> [i]t shall be unlawful for any person knowingly or intentionally . . . to possess . . . *any* . . . equipment, chemical, product, or material which may be used to manufacture a controlled substance . . . .

21 U.S.C. § 843(a)(6) (emphasis added). The statute criminalizes possession of *any* material used to manufacture methamphetamine; it does not require proof of possession of all the required materials. *See Yates*, 86 F. App'x at 159. The court properly instructed the jury.

Second, contesting his conviction under 18 U.S.C. § 922(g)(3), Roberge claims that the district court erred by failing to define "unlawful user" for the jury. *See* 18 U.S.C.

§ 922(g)(3) (prohibiting any person "who is an unlawful user of or addicted to any controlled substance" from possessing a firearm). Because he failed to object on this ground at trial, we review for plain error affecting substantial rights. *See United States v. Valencia*, 55 F. App'x 264, 267 (6th Cir. 2003).

The trial court instructed the jury as follows:

The government does not have to prove that the defendant was actually using a controlled substance at the exact moment he possessed the firearms and ammunition. What the government is required to prove is that the defendant was an unlawful user of a controlled substance during the time period he possessed the firearms and ammunition. The government must prove that the defendant regularly or frequently used one or more controlled substances over an extended period of time and contemporaneously with his possession of firearms and ammunition.

The court explained that "unlawful user" means one who "regularly or frequently" used methamphetamine "over an extended period of time." Roberge contends that the court erred by telling the jury that the government need not prove his use of a controlled substance on the date in the indictment, but he mischaracterizes the charges against him. The indictment does not allege that Roberge *used* a controlled substance "on or about April 13, 2004," but rather that he was an unlawful *user* of controlled substances possessing firearms on that date. And as we noted above, the government need not establish that Roberge used methamphetamine at the exact moment he possessed the firearms. The court did not err—let alone plainly err—in instructing the jury.

C.    Motion to Suppress

Roberge next raises a Fourth Amendment challenge, asserting that the district court erred by denying his motion to suppress evidence seized pursuant to the "no-knock" search warrant. With denials of motions to suppress, "we review the district court's factual findings for clear error and its legal conclusions *de novo*." *United States v. Torres-Ramos*, 536 F.3d 542, 549 (6th Cir. 2008).

Roberge claims that the warrant's affidavit contains "materially false" justifications for waiving the knock-and-announce requirement. But even if he is correct, the district court did not err by denying his motion, because suppression is not a remedy for violation of the knock-and-announce rule. *See Hudson v. Michigan*, 547 U.S. 586, 594 (2006); *see also*

*United States v. Ferguson*, 252 F. App'x 714, 720 (6th Cir. 2007) ("Because *Hudson* controls this case, we cannot conclude that the district court erred by denying the motion to suppress on the basis of a knock-and-announce violation; the exclusion of evidence was not an available remedy.").

D.        Motion to Continue

Turning to his sentence, Roberge maintains that because Rule 32 of the Federal Rules of Criminal Procedure required the district court to allow him specified periods of time to review the Presentence Investigation Report ("PSR") and Addendum, the court erred by denying his motion to continue the sentencing hearing. We review for an abuse of discretion. *United States v. Hall*, 200 F.3d 962, 964 (6th Cir. 2000).

The district court breached two of Rule 32's requirements. First, Rule 32(e)(2) provides that the probation officer must give the PSR to the defendant and his or her attorney "at least 35 days before sentencing unless the defendant waives this minimum period." Fed. R. Crim. P. 32(e)(2). Roberge received the PSR only eighteen days before sentencing. Second, the probation officer submitted his comments to Roberge's objections to the PSR two days before sentencing, violating the requirement that he provide them at least seven days in advance. *See* Fed. R. Crim. P. 32(g).

"[R]ecogniz[ing] the significant role that Rule 32's requirements play in ensuring a just adjudication at the sentencing hearing," *United States v. Mitchell*, 243 F.3d 953, 955 (6th Cir. 2001), we have "made it clear on several occasions that the district courts must be in 'literal compliance' with the requirements of Rule 32," *United States v. Carter*, 374 F.3d 399, 408 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1111 (2005). Contrary to the government's assertion, such matters of timing are not within the district court's discretion. Yet, although we emphasize the importance of Rule 32's mandate, we review violations for harmless error. *See, e.g.*, *Carter*, 374 F.3d at 408 (applying harmless-error analysis to violation of Rule 32(i)(3)(B)); *United States v. Hamad*, 495 F.3d 241, 250–51 (6th Cir. 2007) (same for Rule 32(i)(1)(B)); *United States v. Tiser*, 170 F. App'x 396, 399 (6th Cir. 2006) (same for Rule 32(h)). *But see Mitchell*, 243 F.3d at 955 (no showing of "actual prejudice" required for violation of former Rule 32(c)(3)(A), precursor to Rule 32(i)(1)(A)). This approach finds support in the decisions of our sister circuits. *See United States v.*

*Casas*, 425 F.3d 23, 63–64 (1st Cir. 2005) (reviewing violation of Rule 32(e)(2) for harmless error); *United States v. Archer*, 70 F.3d 1149, 1151 (10th Cir. 1995) (reviewing violation of former Rule 32(c)(3)(A), precursor to Rule 32(e)(2), for prejudice to defendant); *United States v. Sessions*, 297 F. App'x 835, 838 (11th Cir. 2008) (reviewing violation of Rule 32(e)(2) for prejudice to defendant); *United States v. Marrero-Ortiz*, 160 F.3d 768, 777 (1st Cir. 1998) (reviewing violation of former Rule 32(b)(6)(C), precursor to Rule 32(g), for prejudice to defendant). We must remand unless we are certain that the error "did not cause the defendant to receive a more severe sentence." *United States v. Lanesky*, 494 F.3d 558, 561 (6th Cir. 2007) (internal quotation marks omitted); *see also* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

Examining the record and briefs convinces us that we may excuse the district court's error as harmless. At the time Roberge requested a continuance, he had already filed nine objections to the PSR. He has never indicated how more time would have resulted in a different sentence, and his rationale for requiring additional time changed over the course of the litigation. In his motion to continue, his counsel claimed that he had insufficient time to prepare and that there were "other potential constitutional infirmities." Before the district judge, counsel explained merely that "I've been through [the PSR] . . . I just think that . . . the possibility of me missing something was there." In his appellate brief, Roberge argues he needed more days to obtain witnesses and prepare objections, but he identifies no particular witness nor any inaccuracy in the PSR. *See Archer*, 70 F.3d at 1151 (observing that to establish prejudice in a Rule 32(c)(3)(A)—precursor to Rule 32(e)(2)—violation, defendant must "assert contradictory facts that challenge the accuracy of the PSR" or remand "would be meaningless"); *see also United States v. Turner*, 134 F. App'x 17, 22 (6th Cir. 2005) ("'Actual prejudice' is established by showing that a continuance would have made relevant witnesses available or added something to the defense." (quoting *United States v. Crossley*, 224 F.3d 847, 855 (6th Cir. 2000)). When pressed during oral argument, defense counsel claimed he would have called Yodi Roberge, Roberge's wife, and his expert witness. But the testimony counsel expected from these witnesses would only have repeated evidence already before the district court. Because we find that the district court's error did not affect Roberge's sentence, we excuse it as harmless.

E.     Constitutionality of Sentence

Finally, Roberge argues that the district court violated his Sixth Amendment jury-trial right, a claim we review de novo. *United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006). He insists that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), any fact that increases the Guideline range must be put to a jury, and that the district court erred by using facts not found beyond a reasonable doubt to determine his sentence. But Roberge misconstrues *Apprendi*. *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. The factual determinations Roberge complains of here—that he attempted to manufacture 99.64 grams of methamphetamine mixture, created a substantial risk of harm to a child, and used a person under 18 to commit the offense—affected the judge's calculation of the base offense level and sentence enhancements, but did not result in a combined sentence greater than the statutory maximum of 300 months. *See* 21 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 924(c)(1)(A)(i). And "this court and others have repeatedly held since [*United States v.*] *Booker* that district judges can find the facts necessary to calculate the appropriate Guidelines range using the same preponderance-of-the-evidence standard that governed prior to *Booker*." *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006); *see also United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) (en banc) ("So long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking to other facts . . . when selecting a sentence within that statutory range."). The district court did not err in sentencing Roberge.

III.

We affirm Roberge's conviction and sentence.