RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0368p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

  *Plaintiff-Appellee,*

v.

JAMES W. STEWART,

  *Defendant-Appellant.*

No. 08-4268

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 07-00289-001—Christopher A. Boyko, District Judge.

Argued:  October 21, 2010

Decided and Filed:  December 6, 2010

Before:  DAUGHTREY, GILMAN, and McKEAUGE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Robert Smith, III, Cleveland, Ohio, for Appellant.  Joseph P. Schmitz, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:**  Robert Smith, III, Cleveland, Ohio, for Appellant.  Joseph P. Schmitz, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

    RONALD LEE GILMAN, Circuit Judge.  James W. Stewart was convicted on four counts arising out of an armed bank robbery that took place in Euclid, Ohio.  He was sentenced to a total of 60 years in prison, followed by three years of supervised release, and ordered to pay $16,833 in restitution jointly and severally with his coconspirators.

1

Stewart argues on appeal that his conviction should be vacated because the district court allegedly violated his speedy-trial rights and because the evidence was insufficient to sustain his conviction. He also contends that his sentence should be vacated because it is procedurally and substantively unreasonable. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.     The bank robbery

Stewart, Mario Fomby, Terence L. Moore, and Mark Scafe planned to rob a bank a few weeks prior to carrying out their plan. On the morning of October 13, 2006, Scafe drove a stolen van carrying the three other coconspirators to the Charter One Bank, located at 365 East 200th Street in Euclid, Ohio. Stewart, Fomby, and Moore entered the bank through the building's rear doors wearing ski masks and gloves, and brandishing firearms. While Moore and Fomby demanded at gunpoint that two bank tellers fill bags with money, Stewart proceeded towards the bank officials' glass-enclosed cubicles. After yelling at the officials in the cubicles to get down and to not touch or push anything, Stewart exclaimed to Gwen Washington, an assistant manager at the bank: "Do you think I'm f[......] playing with you?" He then fired his shotgun through the glass wall of Washington's cubicle, hitting her in the back of the head. Stewart immediately rechambered his weapon after he shot Washington.

Stewart, Fomby, and Moore then fled the scene of the crime in the stolen van driven by Scafe, who was waiting outside the bank's rear entrance. Moore and Scafe testified at Stewart's trial that, during their getaway, they asked Stewart about the shooting. He acknowledged that he shot Washington because he had "told her not to move, and she moved." The coconspirators split the $16,583 stolen from the bank and disposed of the guns, masks, and gloves that they had used in the robbery.

Stewart's shotgun blast, fired at close range, resulted in devastating injuries to Washington, leading to approximately forty surgeries, five months in the hospital, and continuing pain, physical impairment, and disfigurement. In addition to Washington's

injuries, the shooting and intimidation that accompanied the bank robbery caused other bank employees to suffer severe mental trauma.     Stewart's actions also caused emotional distress to the loved ones of those he directly injured.

After a seven-month investigation by the Federal Bureau of Investigation, the four coconspirators were arrested in May and June 2007.  Moore and Scafe admitted their roles in the robbery and testified at trial that Stewart was the shooter.  Various elements of Moore's and Scafe's accounts were corroborated by other evidence presented at trial, including cell phone records and the testimony of a nonparty witness who stole the getaway car that was used in the robbery.

**B.      Procedural history**

Stewart was indicted in May 2007 on the following four counts arising out of the bank robbery:  conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371; armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d); and two counts of using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).  The first firearm count was punishable under § 924(c)(1)(A)(iii) based on Stewart's discharging his shotgun during the robbery.  Stewart's aiding-and-abetting responsibility for the guns brandished by Fomby and Moore was the basis for the second firearm count, brought under § 924(c)(1)(A)(ii).  In June 2007, the government returned a superseding indictment charging the same four counts, but adding Stewart's three coconspirators.  All four coconspirators were indicted on the first two counts.  Stewart, Fomby, and Moore, but not Scafe, were indicted under the two counts of using or carrying a firearm during a crime of violence.

The trial was originally scheduled to begin on July 31, 2007.  But Stewart's attorney filed an unopposed motion for a continuance approximately a week before the start of trial, seeking to extend the trial date so that he would have the opportunity to adequately prepare for Stewart's complex case.  The district court granted the motion and rescheduled the trial for late October 2007 in order to "avoid a miscarriage of justice by allowing the Defendant and counsel reasonable time necessary for effective preparation."  Pursuant to the procedure set out in the court's Pretrial Order, the court

ordered Stewart's counsel to file a document signed by Stewart showing that the defendant consented to the continuance. Stewart never so consented. To the contrary, Stewart points out in his reply brief that he wrote a letter dated September 2, 2007, informing "the parties involved" that he did not give his attorney the authority to waive his speedy-trial rights and that he did not consent to the continuance that was granted in July. The court nevertheless declined to alter the rescheduled trial date.

In July 2007, Fomby and Moore pled guilty to counts two and four of the Superseding Indictment, and Scafe pled guilty to count one of the Superseding Indictment. The jury convicted Stewart in November 2007 on count one, with the district court declaring a mistrial concerning the remaining charges. At retrial in June 2008, the jury convicted Stewart on all three of the remaining counts. Stewart was sentenced three months later.

Scafe was sentenced in July 2008. He received 60 months in prison, to be followed by 3 years of supervised release. Fomby and Moore were sentenced in August 2008. Fomby received 162 months in prison, to be followed by 3 years of supervised release, and Moore was sentenced to 211 months in prison, to be followed by 3 years of supervised release. Fomby, Moore, and Scafe each appealed their sentences. This court dismissed all three appeals because these defendants had waived the right to appeal in their plea agreements.

**C.     Stewart's sentencing**

In September 2008, the district court sentenced Stewart to 60 months in prison on count one, 300 months in prison on count two, 420 months in prison on count three, and 84 months in prison on count four. The sentences on counts one and two run concurrently and the sentences on counts three and four run concurrently. But the total of 300 months from counts one and two run consecutively with the total of 420 months from counts three and four, amounting to a total of 720 months (60 years) in prison. Stewart was also sentenced to three years of supervised release on each count, running concurrently, and $16,833 in restitution, to be paid jointly and severally with Stewart's coconspirators to compensate the bank and the owner of the stolen getaway car.

The district court made several factual findings, based on a preponderance of the evidence, that factored into its sentencing decision. First, the court found that Stewart's actions constituted attempted first-degree murder. The court based this finding on its conclusion that Stewart shot Washington without hesitation and at close range because she was trying to push the emergency alarm button located under her desk, and that Stewart either wanted to prevent her from pushing the alarm button, to punish her for doing so, or to intimidate other bank employees. Alternatively, the court concluded, Stewart's actions constituted attempted first-degree murder because he shot Washington in the course of the bank robbery. In reaching its final sentence, the court also highlighted the preparation that went into the robbery, including the fact that the coconspirators brought loaded weapons into the bank. The court also noted that Stewart's rechambering his shotgun after he shot Washington indicated his lack of any remorse for his actions, and further showed that the shooting was not accidental.

As for Washington, the district court found that she suffered life-threatening and permanent physical injuries as a result of Stewart's actions. In addition, the court found that only one firearm was discharged and that other firearms were brandished during the robbery.

The sentencing calculation involved multiple steps. First, the district court determined Stewart's sentence under U.S. Sentencing Guidelines (U.S.S.G.) § 2B3.1, the robbery Guideline. The court then concluded that, because Stewart attempted to murder Washington, his actions called for an upward departure leading to a sentence in accordance with the Guideline for assault with intent to commit murder. *See* U.S.S.G. § 2B3.1 cmt. n.5. Because Stewart attempted to commit first-degree murder and the victim sustained permanent and life-threatening injuries, the final Guidelines range for the charge of armed bank robbery was 210 to 262 months in prison.

The district court also concluded that, under the Guidelines, the first charge of using or carrying a firearm during a crime of violence called for a 10-year sentence, to run consecutively to the sentence for armed bank robbery. It then decided that the facts of the case—"something pretty much out of Hollywood"—called for an upward variance

beyond the Guidelines range.  On this basis, the court sentenced Stewart to the statutory maximum allowed for armed bank robbery—300 months in prison.  Based on the statutory range of 10 years to life in prison for the firearm charges, the court sentenced Stewart to 420 months on the charge of using or carrying a firearm during a crime of violence, to run consecutively with the 300 months assigned for armed bank robbery.  The total jail time in Stewart's sentence amounts to 60 years in prison.

**D.    Stewart's appeal**

Stewart appeals his conviction on two grounds.  First, Stewart contends that the district court violated his speedy-trial rights when it improperly granted the motion for a continuance filed by his attorney in July 2007.  Stewart also challenges his conviction on the basis of insufficient evidence, arguing that the proof submitted at trial does not support the conclusion that he was one of the masked men who participated in the bank robbery.

Finally, Stewart challenges his sentence on numerous grounds.  He contends that his conviction should be reversed because the district court inappropriately found facts that contributed to its sentencing decision, double counted Washington's injuries, did not follow the proper sentencing methodology, imposed disparate sentences on Stewart and his coconspirators, and ultimately reached a substantively unreasonable sentence.

## II.  ANALYSIS

**A.    Speedy-trial claim**

Stewart claims that the district court violated his speedy-trial rights when it granted the motion for a continuance filed by his attorney prior to the first trial.  He argues that the court did not properly consider the factors set out in the Speedy Trial Act that are used to determine whether a continuance is warranted.  But Stewart waived his Speedy Trial Act claim by failing to raise it before his trial began.  *See United States v. Brown*, 498 F.3d 523, 529-30 (6th Cir. 2007) (holding, based on 18 U.S.C. § 3162(a)(2), that a defendant waives a speedy-trial claim by not bringing that claim prior to trial).  Stewart responds by arguing that his September 2007 letter, which states that he did not

give his attorney the authority to waive his right to a speedy trial, preserved the claim. Stewart, however, does not point to any place in the record that mentions the letter, and he offers no legal support for his claim that the letter should be treated as a motion to dismiss. Moreover, even if Stewart did not waive his speedy-trial claim, his argument has no merit.

The district court has wide latitude in deciding how to exercise its discretion in applying the ends-of-justice provision of the Speedy Trial Act that governs whether a continuance should be granted. *United States v. Strickland*, 342 F. App'x 103, 109-10 (6th Cir. 2009) (affirming the district court's granting of a continuance under the abuse-of-discretion standard of review). Delays due to continuances granted by the court are excluded from the time within which a trial must start under the Speedy Trial Act if "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

The trial court must state "in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.* Stewart's counsel filed a memorandum explaining why a continuance was warranted on the basis of the factors set out in the Speedy Trial Act's ends-of-justice provision. The memorandum explained that Stewart's defense was particularly complex and time consuming because the various coconspirators were charged with different offenses, Stewart had multiple defenses to his individual charges, different coconspirators were likely to mount conflicting defenses, the charges against Stewart were of a very serious nature, discovery was still ongoing, and Stewart's attorney had to consider possible pretrial motions. Stewart's attorney also listed specific factual matters that were still in need of development. The government did not oppose the motion.

In granting the motion, the district court properly considered the statute's ends-of-justice factors. The court also complied with the statutory requirement of explaining on the record why the ends of justice supporting a continuance outweighed the best interests of the public and of the defendant in having a speedy trial. In particular, the

court recognized that Stewart's counsel needed additional time to analyze the complex issues involved in the case and to prepare Stewart's defense.

Stewart also objects to the district court's grant of a continuance because he never provided his written consent, which was required by the district court's Pretrial Order and was specifically ordered when the court granted the motion. As the government points out, however, such consent is not a statutory requirement under the Speedy Trial Act. *See id.* And where an attorney seeks a continuance without the client's approval, this court has held that the Speedy Trial Act "does not require a defendant's consent to the continuance" in order for a judge to be able to grant a motion in furtherance of the ends of justice. *United States v. Sobh*, 571 F.3d 600, 603 (6th Cir. 2009) (affirming the district court's denial of the defendant's claim based on the Speedy Trial Act).

In fact, the statute even allows the district court to grant a continuance on its own initiative if the interests of justice justify such a delay. 18 U.S.C. § 3161(h)(7)(A). So even though Stewart did not provide his consent, the district court acted within its wide range of discretion in deciding to grant the motion for a continuance that was filed by Stewart's attorney. *See United States v. White*, 985 F.2d 271, 275 n.1 (6th Cir. 1993) (stating that even if the defendant had not waived his Speedy Trial Act claim, he still "would not have prevailed, as his attorney consented to the delays"). Nor does Stewart's letter objecting to the continuance affect the court's decision to grant the continuance because the court ordered the continuance in July, but Stewart did not write his letter until September.

Furthermore, in order to obtain a reversal of a conviction on the basis of a violation of the Speedy Trial Act where a district court exercises its discretion to grant a continuance for the ends of justice, a defendant must show "actual prejudice." *United States v. Gardner*, 488 F.3d 700, 718 (6th Cir. 2007) (refusing to overturn the defendant's conviction based on a violation of the Speedy Trial Act where the "period of delay occasioned by the granting of [two of the defendants'] motions was reasonable"). Stewart made no showing that the three-month delay that allowed his

defense counsel adequate time to prepare for trial prejudiced Stewart's defense.  He claims, however, that he was prejudiced by the fact that the delay afforded the government more time to prepare its case against him, but he cites no authority supporting this as a recognizable type of prejudice under the Speedy Trial Act.  This claim also fails on its own terms because Stewart was not convicted on all four counts until his retrial in June 2008.  He counters by arguing that, if not for the delay, he might not have been convicted on the first count at his initial trial, in which case there might not have been a second trial at all.  But this highly speculative possibility does not lead to the conclusion that the delay from July to October 2007 was the cause of Stewart's ultimate sentence and conviction in June 2008.

**B.     Sufficiency of the evidence for Stewart's conviction**

Stewart next argues that the jury was not presented with sufficient evidence to sustain his conviction because the only direct evidence identifying Stewart as a participant in the crime came from Stewart's coconspirators.  "When reviewing the sufficiency of evidence in support of a jury verdict, this Court views the evidence in the light most favorable to the prosecution and gives the prosecution the benefit of all reasonable inferences from the testimony." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006).  A jury verdict is supported by sufficient evidence if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  "In sum, a defendant claiming insufficiency of the evidence bears a very heavy burden." *Abboud*, 438 F.3d at 589 (citation and internal quotation marks omitted).

Stewart argues that because both of his testifying coconspirators received favorable treatment for cooperating with the government, the evidence at trial was not sufficient for the jury to convict him.  As the government points out, however, "[e]ven the uncorroborated testimony of an accomplice may support a conviction." *United States v. Owens*, 426 F.3d 800, 808 (6th Cir. 2005) (citation and internal quotation marks omitted) (finding the testimony of the defendant's coconspirators to be a sufficient basis for conviction).  The fact that the coconspirators were "cooperating with the government

as a result of a plea bargain" does not change the result. *United States v. Welch*, 97 F.3d 142, 149 (6th Cir. 1996) (holding that whether witnesses are cooperating with the government is irrelevant to the sufficiency-of-the-evidence claim). Moreover, the government put forth circumstantial evidence corroborating various elements of the coconspirators' testimony, thereby further supporting the case against Stewart.

The present case is distinguishable from *United States v. Summers*, 414 F.3d 1287 (10th Cir. 2005), cited by Stewart, in which the only evidence tying the defendant to a bank robbery was the defendant's presence with the perpetrators when they were arrested, with no proof regarding the identity of an unknown person present at various stages of the crime. *Id.*, 414 F.3d at 1296. In contrast to the facts in *Summers*, eyewitnesses in the present case testified to Stewart's role in the crime and circumstantial evidence corroborated their story. Stewart has thus failed to meet his "very heavy burden" of showing that, based on the government's evidence, no rational juror could have found him guilty beyond a reasonable doubt. *See Abboud*, 438 F.3d at 589.

## C.     Sentencing

### 1.     *Standard of review*

If a district court asks counsel "whether they have any objections to the sentence just pronounced that have not previously been raised," then sentencing objections raised for the first time on appeal are reviewed under the plain-error standard. *United States v. Novales*, 589 F.3d 310, 313 (6th Cir. 2009) (citation omitted). But if a court vaguely asks whether the parties have anything more to add, such an inquiry has been found not to give the parties sufficient opportunity to object to the sentence, and subsequent objections are reviewed under a less deferential standard. *Id.* (holding that the question "So is there anything else on these?" did not give the parties a sufficient warning of their need to immediately raise any objections to the sentence).

After explaining the factors considered in reaching its sentencing decision, but before declaring Stewart's sentence, the district court here asked both sides whether

there was "anything the Court has missed before I pass sentence," to which both sides responded in the negative.  We need not decide whether the district court's inquiry constituted a sufficient opportunity for Stewart to object to his sentence because we conclude that his sentence should be affirmed even under the normal standards of review.  The standard of review that applies to each of Stewart's objections to his sentence will be set out below.

### 2.    *Judicial factfinding*

#### a.        *Judicial factfinding by a preponderance of the evidence*

Stewart argues that the district court's engaging in factfinding violated his Fifth Amendment due process rights and his Sixth Amendment right to a jury trial.  According to Stewart, the court's finding by a preponderance of the evidence that he committed assault with intent to commit murder should not have contributed to the court's departure from the Guidelines sentencing range for armed bank robbery.  Claims of improper judicial factfinding are reviewed de novo. *United States v. Roberge*, 565 F.3d 1005, 1012 (6th Cir. 2009).

In making this argument, Stewart misstates the law concerning the permissibility of judicial factfinding in sentencing decisions.  The Supreme Court decided in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny that judges may find facts by a preponderance of the evidence so long as the resulting sentence does not "increase[] the penalty for a crime beyond the prescribed statutory maximum" sentence allowed by the jury's verdict.  *See id.*, 530 U.S. at 490.

Provided that the sentence imposed is within the statutorily prescribed range justified by the jury's verdict, the possibility that the judicially found facts might also constitute another separate offense is not per se a basis for objection. *United States v. Mayberry*, 540 F.3d 506, 512, 516-17 (6th Cir. 2008) (approving the district court's determination that the defendant participated in an uncharged armed robbery because judges may find facts by a preponderance of the evidence "so long as the sentence does not exceed the statutory maximum" for the offense found by the jury).  The district court

in the present case did not exceed the maximum sentence allowed under Stewart's four counts of conviction. It thus properly found facts that influenced its sentencing decision.

### b.       *Sufficiency of judicially found facts*

Stewart also challenges the sufficiency of the district court's factual finding that he intended to kill Washington. But Stewart offers no explanation as to why the evidence presented at trial does not support the court's conclusion. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation and brackets omitted) (holding that the plaintiffs waived an argument about their alleged false arrest due to a lack of development).

Moreover, even if Stewart had not waived his argument concerning the sufficiency of the district court's judicially found facts, there is no basis in the record to overcome the heavy burden required to overturn the court's factual findings made during its sentencing decision. *See United States v. Alford*, 436 F.3d 677, 682 (6th Cir. 2006) (reviewing judicial factfinding under the clearly erroneous standard of review). The court explained in detail that its finding concerning Stewart's intent to kill Washington was based on Stewart having aimed his shotgun at Washington's head at close range and the court's conclusion that Stewart was motivated by Washington's attempt to push the emergency alarm button. Alternatively, the court based its finding on the fact that Stewart shot Washington during the course of the bank robbery. Based on this analysis, the court concluded that

> the evidence establishes by at least a preponderance of the evidence that if Mr. Stewart were successful in his intent to kill Gwen Washington, it would have constituted first degree murder under 18 U.S.C. § 1111, because it would have been either willful, deliberate, malicious, and premeditated or would have been a felony murder, that is, would have constituted a murder committed in the perpetration of a robbery.

The fact that Stewart, after shooting Washington in the head, "[c]almly ejected the shell, racked another one, and was prepared to fire [again] if someone else didn't follow [his] instructions" also contributed to the district court's finding that the shooting was not an accident. This evidence and analysis convinces us that the district court did not err in finding Stewart assaulted Washington with the intent to kill her.

### 3.      *Procedural reasonableness*

#### a.      *Standard of review*

Criminal sentences are reviewed for both substantive and procedural reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). When reviewing a district court's sentencing determination, we "first ensure that the district court committed no significant procedural error." *Id.* at 51. Both procedural and substantive reasonableness are reviewed under the deferential abuse-of-discretion standard. *United States v. Novales*, 589 F.3d 310, 314 (6th Cir. 2009).

"Procedural reasonableness requires that a district court must properly calculate the Guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence—including an explanation for any variance from the guidelines range." *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008) (citation and internal quotation marks omitted). The court's legal interpretation of the Guidelines are reviewed de novo, but its factual findings are reviewed under the clearly-erroneous standard. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007). Although the district court need not explicitly reference each of the factors set forth in 18 U.S.C. § 3553(a), there must be sufficient evidence in the record to affirmatively demonstrate that the court gave each of them consideration. *See United States v. Simmons*, 501 F.3d 620, 625 (6th Cir. 2007). Moreover, the Supreme Court has made clear that, for sentencing purposes, "[t]he appropriateness of brevity or length, conciseness or detail . . . depends upon circumstances" that are left "to the judge's own professional judgment." *Rita v. United States*, 551 U.S. 338, 356 (2007).

### b.　Double counting

Stewart argues that the district court improperly double counted Washington's injuries by factoring those injuries into the sentencing equation twice. "Impermissible double counting . . . renders a sentence procedurally unreasonable." *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010) (citation and internal quotation marks omitted). The district court, to be sure, accounted for Washington's injuries under both the robbery Guideline and the assault-with-attempt-to-commit-murder Guideline. But her injuries factored into Stewart's sentence just once because the court's six-level enhancement based on her injuries under the robbery Guideline was rendered irrelevant when the court subsequently departed from that Guideline in favor of the assault-with-attempt-to-commit-murder Guideline.

The district court's upward departure from the robbery Guideline to the assault-with-intent-to-commit-murder Guideline was based solely on Stewart's intent to kill Washington, pursuant to Application Note 5 to Guideline § 2B3.1 (the robbery Guideline). Application Note 5 states that "[i]f the defendant intended to murder the victim, an upward departure [to the assault-with-intent-to-commit-murder Guideline] may be warranted." U.S.S.G. § 2B3.1 cmt. n.5. The court's departure was thus warranted regardless of whether Washington actually sustained any serious physical injuries. In other words, the court could have departed to the assault-with-intent-to-commit-murder Guideline without any consideration of Washington's injuries under the robbery Guideline. When the court proceeded to add an additional four offense levels because of the victim's permanent and life-threatening bodily injuries under Guideline § 2A2.1(b)(1)(A) (the assault-with-intent-to-commit-murder Guideline), the court was therefore counting Washington's injuries only once because the court's prior consideration of her injuries within the robbery Guideline was no longer accounted for under the assault-with-intent-to-commit-murder Guideline.

Stewart does not raise on appeal the issue of whether the district court improperly double counted various aspects of the crime when the court imposed an upward sentencing variance for both the count of armed bank robbery and the count of using or

carrying a firearm during a crime of violence. On the one hand, there is no double-counting problem with imposing a consecutive sentence for a violation of 18 U.S.C. § 924(c) (dealing with using or carrying a firearm during a crime of violence) along with a sentence for the underlying crime of violence referenced in § 924(c). This practice is allowed because the "language of § 924(c) is plain. The statute mandates a five year, mandatory, consecutive sentence 'in addition to' the punishment for the other crime of violence." *United States v. Johnson*, 22 F.3d 106, 108 (6th Cir. 1994) (holding that there is no double-counting problem with § 924(c) because "Congress intended to impose additional punishment for the same conduct"). Moreover, the practice of considering the details of the crime in the context of both the armed bank robbery and the § 924(c) violation is supported by the fact that the court may punish "criminal activity where that activity has been considered at sentencing for a separate crime." *Witte v. United States*, 515 U.S. 389, 398 (1995) (noting that the Court had correctly held in *Williams v. Oklahoma*, 358 U.S. 576 (1959), that the district court did not err in accounting for the defendant's act of murder, for which he had already been convicted, in a subsequent sentence for kidnapping (citing *Williams*, 358 U.S. at 585-86)).

But double-counting concerns still limit how 18 U.S.C. § 924(c) interacts with the punishment for the underlying crime of violence. Where a defendant is charged with a § 924(c) violation, the punishment for the underlying crime may not be enhanced for brandishing a weapon because "[i]n such a case, a § 924(c) sentence and a brandishing enhancement would be double counting." *United States v. Griffis*, 282 F.3d 443, 446 (6th Cir. 2002) (holding that "a brandishing enhancement and § 924(c) count are not cumulative punishment when assessed for separate offenses," but do constitute impermissible double counting where both are imposed for the same underlying offense). Moreover, even though 18 U.S.C. § 924(c) allows for a maximum sentence of life in prison, this court has recognized that such a sentence is "rarely, if ever, imposed." *United States v. Harris*, 397 F.3d 404, 412 (6th Cir. 2005) (citing *Harris v. United States*, 536 U.S. 545, 578 n.4 (2002) (Thomas, J., dissenting)).

The sentence imposed pursuant to § 924(c) will, in the vast majority of cases, simply be the mandatory-minimum sentence called for by the statute. *Harris*, 536 U.S. at 578 n.4. How double-counting principles should apply where a sentencing court imposes a variance on both a § 924(c) sentence and also on the sentence that goes along with the underlying crime of violence is thus unclear if both variances are based on the same aspects of the crime. But because Stewart did not raise this objection concerning the potential overlap between the district court's upward variances for Stewart's § 924(c) violation and his armed-bank-robbery violation, we need not resolve this point of law in the present case.

### c.     *Distinguishing between an upward departure and a variance*

Stewart also argues that the district court failed to clarify whether the sentence imposed constitutes a departure or a variance from the Guidelines. Although a court's failure to distinguish between a departure and a variance might in some circumstances affect the sentence's procedural reasonableness, the court in the present case made no such mistake. *See United States v. Herrera-Zuniga*, 571 F.3d 568, 588 n.11 (6th Cir. 2009) (suggesting that, in some situations, "the failure to explain the basis for a deviation or an adjusted sentencing range might create confusion that itself rises to the level of sentencing error"). In the present case, the court explicitly stated that its sentencing increase above the Guidelines range constituted an "upward variance." The court further clarified that it was imposing a variance rather than a departure by citing *Irizarry v. United States*, 553 U.S. 708 (2008), for the proposition that there was no need to give notice prior to its sentencing deviation. *See Irizarry*, 553 U.S. at 713-14 (holding that notice needs to be given for departures but not for variances). The court also explained that it would identify possible Guidelines departures before deciding whether a non Guidelines variance was appropriate. By carefully following this sentencing procedure, the court made clear that its final sentencing enhancement constituted a variance from the Guidelines rather than a departure.

#### d.     *Explanation of sentencing methodology*

More generally, Stewart challenges the district court's alleged failure to explain its sentencing methodology. But the court in fact set out and adhered to the proper method of analysis used in sentencing decisions since *United States v. Booker*, 543 U.S. 220 (2005). The district court first correctly calculated Stewart's Guidelines offense level. It then decided that the nature of his crime warranted an upward departure within the Guidelines framework. Finally, using the factors set forth in 18 U.S.C. § 3553(a), the court imposed an upward variance beyond the Guidelines calculations, but kept this variance within the statutorily prescribed sentencing range. The court's sentencing methodology was thus entirely appropriate.

#### 4.     *Substantive reasonableness*

After determining that the district court's sentencing decision is procedurally sound, we must "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard[,] . . . tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). We must give "due deference" to the district court's decision that the § 3553(a) factors justify a variance. *Id.* at 51. "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). "The fact that [this] court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

#### a.     *Sentencing disparities*

Stewart challenges the substantive reasonableness of his sentence based on the disparities between the sentence that he received and those imposed on his coconspirators. The United States Code instructs courts to "avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar

conduct." 18 U.S.C. § 3553(a)(6).  Divergent sentences are justified, however, where defendants "did not actually engage in the same conduct." *United States v. Vowell*, 516 F.3d 503, 513 (6th Cir. 2008).

The district court explicitly addressed the issue of sentencing disparities and accounted for its divergence in the present case by explaining that "Stewart has separated himself from the rest of his codefendants by firing that shotgun at the back of Ms. Washington's head.  To me, there is no comparison."  Moreover, the court noted the coconspirators' acceptance of responsibility and/or cooperation with authorities as factors that it considered in each of their sentencings.  Stewart, in contrast, did not cooperate with the government or accept responsibility for his actions, and thus did not warrant any leniency on these grounds.

He also argues that the disparity of applying the Guideline for assault with intent to commit murder to him but not to his coconspirators "is fundamentally unfair and violates his due process rights."  But the only authority that Stewart cites for this proposition is a case noting the straightforward principle that sentencing disparities based on the same underlying conduct are unwarranted.  *United States v. Sardin*, 921 F.2d 1064, 1067 (10th Cir. 1990).  Yet *Sardin* itself acknowledged that disparate sentences may be upheld where the disparity is justified by distinguishing factors in the record.  *Id.*  The district court in the present case determined that because Stewart, but not his coconspirators, attempted to murder Washington, a harsher sentence was warranted for Stewart than for his coconspirators.  The court therefore did not abuse its discretion when it sentenced Stewart more severely.  And because Stewart does not argue that he received a harsher sentence in comparison to others nationwide who have been convicted of a similar offense, we need not address that issue.

### b.          *Size of the variance*

Finally, Stewart objects to the size of the district court's upward variance, which yielded a sentence approximately twice as high as that called for under the Guidelines. A district court need not give "a mechanical recitation of the § 3553(a) factors," but rather must provide an explanation of why, based on the totality of the circumstances,

it "chose the sentence that it did. And we have declared that the district court is entitled to deference in its sentencing decisions because of its ringside perspective on the sentencing hearing and its experience over time in sentencing other individuals." *Vowell*, 516 F.3d at 510 (citations and internal quotation marks omitted) (sentencing a sex offender to 65 years in prison, which amounted to a 242 percent upward variance over the Guidelines range).

In applying the § 3553(a) factors to Stewart's case, the district court noted that it "must look at just punishment, afford adequate deterrence, protect the public, reflect the seriousness of the offense, and improve offender conduct and condition." The court's determinations that Stewart's actions were tantamount to attempted first-degree murder, that Stewart felt no immediate remorse for his conduct, and that what he did had such a severe impact on Washington and the other victims, properly influenced its sentencing decision. It also conducted a detailed examination of Stewart's personal history and characteristics before deciding what sentence to impose. In sum, the court considered the various § 3553(a) factors and made its final sentencing decision based on the totality of the circumstances.

The size of the district court's variance from the Guidelines also satisfies the principle that "a major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50. As the court noted, if Stewart "had been successful in his intent, Ms. Washington would have been dead . . . . This is a serious offense, and anything more serious would be if Ms. Washington had died." The court also emphasized that Stewart did not feel any immediate remorse or regret about shooting Washington.

Finally, Stewart's sentence satisfies the principle that high sentences should "preserve reasoned distinctions among offenders" by leaving room for more severe offenders to receive harsher punishments. *United States v. Poynter*, 495 F.3d 349, 355 (6th Cir. 2007) (vacating a statutory maximum sentence imposed on a sex offender because the extreme deviation from the Guidelines did not leave room to distinguish between the defendant and worse sex offenders). The district court went to great lengths

to explain that short of Washington having died, the court could not think of a more serious situation than what was presented in this case.  Under these circumstances, the court did not abuse its discretion by sentencing Stewart to 25 years in prison on the armed-robbery count and to 35 years on one of the firearm counts.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.