NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0132n.06

No. 12-5013

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Feb 04, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| DANIEL QUAIL, | ) | THE MIDDLE DISTRICT OF |
| | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | | OPINION |

Before: WHITE and DONALD, Circuit Judges; and VARLAN, District Judge[*]

**Bernice B. Donald, Circuit Judge**. Daniel Quail was charged with and pleaded guilty to two counts of distribution of child pornography and one count of receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b); and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). Quail was sentenced to 202 months of imprisonment, followed by 36 months of confinement at a halfway house, and 25 years of supervised release. Quail now appeals, arguing that the district court failed to make a finding on a controverted issue at sentencing in violation of Rule 32 of the Federal Rules of Criminal Procedure, that his sentence was procedurally unreasonable, and the district court's imposition of

---

[*]The Honorable Thomas A. Varlan, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

his terms of supervised release are unconstitutional. For the following reasons, we remand for resentencing.

I.

For a total of nearly fifteen years, Quail worked at several YMCA locations in Florida. He worked at the Venice, Florida location for ten years, serving as a coordinator and director of various youth programs. In 2006, a mother enrolled her children in programs at the Venice YMCA, including her son, referred to hereinafter as "the minor." The minor's father was incarcerated, and the mother felt it was important for her son to have an adult male role model. Soon thereafter, Quail and the mother developed a close relationship. Quail began spending time with the family outside of the YMCA; he was also permitted to travel alone with the minor to sporting events. Over time, the minor began to call Quail "Dad." In 2007, the relationship between Quail and the mother began to deteriorate, and the mother eventually removed her children, including the minor, from the youth programs at the YMCA.

In late 2007, Quail, a victim of childhood sexual abuse, "became obsessed with child pornography." Struggling with this obsession and depression, in 2008 Quail decided to relocate to Tennessee where his mother lived. He then began working at another YMCA location in Middle Tennessee.

In 2009, Canadian law enforcement officers arrested a third-party in connection with child pornography and the online exploitation of children. Upon seizing this third-party's computer, the

officers discovered a peer-to-peer network that enabled them to download images from Quail's computer. The Canadian officials subsequently initiated an online chat with Quail. Officials were able to gain access to five folders on Quail's computer that contained child pornography. The officers were unable to gain access to a password protected folder named, "myson[the minor]," and Quail refused to provide the password. The Canadian officials then notified United States Immigration and Customs Enforcement (ICE) agents.

On December 29, 2009, ICE agents executed a search warrant on Quail's residence. During the search, agents found several non-pornographic pictures of the minor throughout the home. A search of Quail's computer uncovered 524 videos and 5,832 photographs of child pornography. In the "myson[the minor]" folder, the agents found several non-pornographic photos of the minor. The folder also contained many pornographic images of young males that could not be identified due to a lack of identifying markers. Upon discovery of the minor's images in the folder, ICE agents contacted the Sarasota County Sheriff's Office. Investigators in Sarasota County, Florida asked the minor if he had been sexually abused by Quail. The minor indicated that he did not think anything happened to him but could not remember everything. The Sarasota County Sheriff's Office was unable to identify the minor in any of the pornographic images in the "myson[the minor]" folder and subsequently closed the case, stating "[t]here is not a victim alleging a crime."

ICE agents also conducted their own investigation. Agents sent Quail's hard drive to the Special Agent Charge Office in New Orleans for forensic examination. In February 2010, the government cross-referenced the images on Quail's hard drive against known images in the National

Center for Missing and Exploited Children database. This examination did not include the images from the "myson[the minor]" folder.

In October 2010, ICE Agent Jonathan Hendrix asked the minor's mother if she could identify her son in two of the pornographic photos from the "myson[the minor]" folder. She indicated that her son was in both of the pictures. Two weeks before trial was set, the government rechecked all of the photos against the database, this time including the ones in the "myson[the minor]" folder. The recheck revealed that at least one of the two photos shown to the mother was discovered in previous investigations. Agent Hendrix subsequently told the mother that the images he previously showed her were not of her son.

Prior to the conclusion of the Sarasota County, Florida investigation, the mother contacted an attorney and relayed concerns that her son had been sexually abused. The attorney referred her to a child therapist, Dr. Eddy Regnier. The attorney told Dr. Regnier that the minor likely had been abused and that the man accused of abusing him had been arrested for sexually abusing a number of boys. In actuality, Quail had not been arrested for child sexual abuse. Dr. Regnier ultimately provided treatment to the minor in the form of numerous counseling sessions. Throughout the sessions, the minor repeatedly told Dr. Regnier that he could not remember being abused by Quail.

At Quail's sentencing hearing, while acknowledging that the minor never made a disclosure, Dr. Regnier, the government's witness, testified that he believed that the minor was "traumatized sexually." Dr. Regnier further testified that the minor relayed positive memories of Quail but when

asked how he felt about Quail, the minor displayed feelings of anger. Quail's expert witness, Dr. David Lisak, did not opine definitively whether he thought the minor was sexually abused, but did testify that typically there is more than one victim in child sexual abuse cases and that he would give more weight to an investigation as opposed to the minor's failure to remember. Dr. Lisak also suggested that it is possible that the minor's failure to remember was the result of loyalty to his mother, in that he could be afraid to contradict what his mother believed happened to him.

During the argument phase of sentencing, both defense counsel and the government engaged in lengthy discussions with the court on the issue of whether the minor was sexually abused by Quail. The government sought the maximum sentence under the Guidelines range on the basis of victim impact; however, both defense counsel and the court pointed out that the government had failed to object to the presentence investigation report (PSR), which calculated the Guidelines range based on a victim impact of zero. The court also noted that the government could argue the § 3553(a) factors but that there might be an issue if the government chose to argue against the Guidelines range where the PSR determined there was no victim impact. Ultimately, after hearing both sides, the district court concluded that it would "exercise a degree of caution" in sentencing based on abuse and that it believed that Quail -"at a minimum"- psychologically abused the minor. The district court then imposed its sentence of 202 months of imprisonment, 36 months of confinement to a halfway house after Quail's release from prison, and 25 years of supervised release.

II.

Quail now argues that the district court violated Federal Rule of Criminal Procedure 32 when it failed to clearly rule on a controverted issued raised at sentencing: whether the minor was actually sexually abused by Quail. He also contends that the district court failed to rule on whether the government waived its right to claim that the minor was a victim. In response, the government submits that the district court found that it did not waive its right to raise the claim and that the district court was not required to make a finding on the issue of abuse because it did not consider it when imposing Quail's sentence.

Rule 32 requires that when an issue is actively raised during a sentencing hearing, as it was here, the district court must affirmatively rule on the controverted matter if the issue affects the defendant's sentence or determine that the matter will not affect sentencing. Fed. R. Crim. P. 32(i)(3)(B); *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007). The district court "may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence." *Id*. (citations and internal quotation marks omitted). We have repeatedly held that this Rule requires "literal compliance." *Id*.; *United States v. Roberge*, 565 F.3d 1005, 1011 (6th Cir. 2009); *United States v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003); *see also United States v. Monus*, 128 F.3d 376, 396 (6th Cir. 1997).

As a threshold matter, Quail's two arguments regarding the violation of Rule 32 are somewhat intertwined. If the district court heard arguments on whether or not the minor was abused

by Quail, the assumption is that the district court did not believe that issue was waived. On the other hand, the district court made several references to the significance of the government's failure to object to the PSR. This ambiguity implies that the district court failed to make a clear finding regarding the waiver, and thus suggests that Rule 32 was indeed violated. However, the district court likely did not impose a sentence based on a waiver alone, but instead either imposed a sentence based on a finding of sexual abuse or a determination that it would not consider sexual abuse when sentencing Quail. Accordingly, our focus is on the latter, particularly the court's statements regarding proof and the following sentencing conclusion:

> I am cognizant that the Government wants the maximum Guideline sentence, and I have considered that, but I want to exercise a degree of caution in doing that on the basis of physical abuse to [the Minor] where it wasn't charged and there were - and a failure to take an objection that there was no victim. That is not to say that those facts do not lose some evidentiary value. And so the Court is going to try to impose a sentence that I think reflects that there was an injury to [the Minor], psychological at a minimum, that this was a destructive relationship between this defendant.

(alterations in the original).

Based upon this statement, we find that the district court failed to comply with the requirements of Rule 32(i)(3)(B) as it relates to a finding of sexual abuse. While the district court admitted that it did not think that there was clear and convincing proof of harm to the child, the district court did express that there might be sufficient circumstantial evidence of abuse. The actual finding of the district court, however, is that of psychological abuse, an issue not actively raised at sentencing. The government insists that because the district court sentence was based on

psychological abuse, it must necessarily have determined that it did not need to rule on the issue of sexual abuse. The government further submits that the court may have sentenced on the basis of "possible physical harm," but that it complied with Rule 32 by not basing the sentence on sexual abuse.

The government's rationale is troublesome. Viewing the sentencing transcript in context, the finding of physical harm is synonymous with a finding of sexual abuse. In fact, the government's brief reads: "Accordingly, the district court 'wanted to exercise a degree of caution' in sentencing on *sexual abuse* when it could not be proved by preponderance of the evidence." (emphasis added). Even the government uses the term "sexual abuse" interchangeably with the district court's language of: "I want to exercise a degree of caution in [sentencing] on the basis of *physical abuse*." (emphasis added). Moreover, if the injury was "psychological *at a minimum*," what other way, other than physically, could Quail have harmed the minor? (emphasis added).

Given the statement by the district court, the government's confusion is understandable. When the district court indicated that it "wanted to exercise a degree of caution[,]" did it mean that it was not sentencing Quail on the basis of a finding of sexual abuse? Or did it mean that it would not consider the sexual abuse a primary factor? Regarding the court's evidentiary value assessment, the court appears to have indicated that the facts relating to the abuse lose *some* evidentiary value because Quail was not charged with abuse and the government did not object to the PSR's determination that there was no victim. The court's use of the word "some" implies that not all evidentiary value was lost; however, the court's use of the double negative undermines the clarity

of this statement. Finally, the district court's finding, that the injury to the minor was psychological at a minimum, indicates that other injuries, such as sexual abuse, may have been taken into account.

Ultimately, the district court never affirmatively ruled that Quail did or did not sexually abuse the minor, which the government concedes. The district court's language during sentencing is also far from clear as to whether it even considered sexual abuse. Absent this clarity, the district court fell short of the requirements of Rule 32 and relevant case law mandating "literal compliance . . . to ensure that defendants are sentenced on the basis of accurate information and . . . a clear record [is available] for appellate courts[.]" *Monus*, 128 F.3d at 396 (citation and internal quotation marks omitted). A violation of Rule 32 is subject to harmless error review, *see Roberge*, 565 F.3d at 1011; however, remand is required "unless we are certain that the error did not cause the defendant to receive a more severe sentence." *Id*. (citations and internal quotation marks omitted).

III.

Because the district court failed to make a finding in accordance with Rule 32, and we are unclear as to whether it sentenced Quail, at least in part, based on sexual abuse of the minor, we must REMAND for resentencing. Because we reach this conclusion, we need not address Quail's remaining challenges to his sentence.